FILED

2020 APR 20  PM 1:02

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA
BY:_____

1
Alicia Remsen Richards
351 Catalina Drive
2
Newport Beach, CA 92663
(949)813-6138
3
Richardsalicia007@gmail.com

4
Plaintiff in Pro Per

5

6

7

8
IN THE UNITED STATES DISTRICT COURT

9
FOR THE CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

10

11
                                                **8:20-cv-00768 DMG (DFMx)**

12
ALICIA MARIE RICHARDS,                )    Case No.: _____:_____-CV-_____
                                      )
13
        Plaintiff,                    )
                                      )
14
vs.                                   )    **COMPLAINT FOR TEMPORARY**
                                      )    **RESTRAINING ORDER, DECLARATORY**
15
ORANGE COUNTY SUPERIOR COURT,         )    **JUDGMENT, AND PRELIMINARY AND**
FAMILY LAW DIVISION, HONORABL         )    **PERMANENT INJUCTIVE RELIEF**
16
ANDRE DE LA CRUZ,                     )
JUDGE,                                )
17
                                      )
        Defendant.                    )
18
                                      )
_____)

19

20
**I.    INTRODUCTION AND FEDERAL QUESTION JURISDICTION**

21
        Plaintiff Alicia Marie Richards, hereinafter referred to as Plaintiff, is a pro se litigant who, after
22
having exhausted her state remedies without a decision on the merits of her federally couched claims in
23
the State's judicial system, brings her federal claims against the ORANGE COUNTY SUPERIOR
24
COURT, Family Law Division, the Honorable Andre De La Cruz, Judge hereinafter referred to as
25
Defendant, is Petitioning this Court to issue a Temporary Restraining Order, Declaratory Judgment, and
26
Injunctive Relief on whether or not, in violation of Public Policy as well as the mandatory provisions of
27
State Law, Plaintiff was denied  "Substantive Due Process" and EQUAL PROTECTION" of State Law
28

1

dealing with federally protected property rights set forth in the States' Civil Statute's Family Law Code Sections 2030, *et seq.* and Family Law Codes Sections 2120 through 2129, inclusively. (See State Supreme Court Denial of Review attached hereto as **Exhibit 1**; Family Law Code Sections 2030 *et seq.* attached hereto as **Exhibit 2**; Family Law Code Sections 2120 through 2129 attached hereto as **Exhibit 3**; cf. *Sanders v. United States* 373 U.S. 1, 8, 15-16 [83 S.Ct. 1068] (1963) and *Lucido v. Superior Court*, 51 Cal. 3d 335, 341-42 [727 CR 767] (1990); See also STATEMENT OF THE CASE, *infra*.

## II.    PRELIMINARY STATEMENT

### A.    JURISDICTION

1.    This action arises under the United States Constitution, particularly the Fourteenth Amendment to the United States Constitution starting with Plaintiff's claims that she was denied her Civil Rights to be equally represented by counsel pursuant to the mandatory State Family Law Statute commencing with Family Law Code Sections 2030 *et seq.* and to have the torts Plaintiff claims were committed by her ex spouse, to take her fair share of the community properties by fraud and deceit, to be litigated by the trial court in accordance with Family Law Code Sections 2120 through 2129, that provide for a hearing on these matters before any disposition or division on the community property could take  place to ensure a fair distribution of the community estate. (See **Exhibit 2** "Family Law Code Sections 2030 *et seq.*; See also attached hereto as **Exhibit 4** Family Law Code Section 1000(b)(2) "Family Law Tort Liability" at Part 3 "Grounds and Time Limits for Actions or Motion to Set Aside Judgment - Family Law Code Sections 2120 through 2129 compare with **Exhibit 3**. See also 42 U.S.C. 1983; 28 U.S.C. 1331 and U.S.C. 2201, providing for declaratory and injunctive relief over Plaintiff's federally couched claims and under federal law, specifically, Title 42 U.S.C. § 1983. This court has jurisdiction:

a.    Over Plaintiff's claim arising under the United States Constitution and federal law pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983;

b.    Over Plaintiff's prayer for preliminary and permanent injunctive relief under F.R.C.P. 65(a);

c.    Over Plaintiff's prayer for declaratory relief under Title 28 U.S.C. § 2201; and

d.      To Award Attorney Fees pursuant to Title 42 U.S.C. § 1988.

2.      Venue is proper under 28 U.S.C. § 1391 in Central District of California because this claim arose therein. Each and all of the acts alleged herein were done by Defendant under the color and pretense of state law, statutes, ordinances, regulations, or customs.

**B.      THE PARTIES**

**PLAINTIFF**

3.      Plaintiff Alicia Marie Richards is a citizen of the United States and was, at all times relevant to this complaint, a resident of Orange County, California.

**DEFENDANT**

4.      Defendant the Honorable Judge Andre De La Cruz is a Family Law Judge for the Orange County Superior Court, Family Law Division. He is sued for declaratory and injunctive relief only. At all times relevant to this complaint, the conduct of Defendant was under color and authority of state law.

**III.      SUMMARY OF FACTS**

5.      ALICIA MARIE RICHARDS [hereinafter Plaintiff] resides in the County of Orange, State of California and is the Plaintiff in this action.

6.      On September 13, 2017, Plaintiff filed a motion to vacate the Marriage Settlement Agreement and requested a hearing for "need based attorney fees" to be held before the motion to vacate the Marriage Settlement Agreement and filed the required FL-318 form and the FL-518 form and attached them to her motion.

7.      On January 26, 2018, Defendant held the Motion to Vacate the Marriage Settlement Agreement completely ignoring Plaintiff's request for need based attorney fees and proceeded anyway denying plaintiff a "full, fair, and impartial" enforcement of the state family law codes.

8.      On January 29, 2018, Plaintiff filed an appeal on the denial of her motion to vacate the Marriage Settlement Agreement and one of her claims was that she was denied due process and equal protection of the law when the Trial Court failed to first hold the mandatory hearing for need based attorney fees before holding her motion to vacate forcing Plaintiff into representing herself.

9.      On January 9, 2020, the Fourth Appellate District Court denied Plaintiff's appeal stating that Plaintiff must have "waived" the mandatory meeting the Court was supposed to have held on her request for need based attorney without either party given the opportunity to brief the issue. Notwithstanding, the California Supreme Court Denial of Review and the Appellate Court statement that Plaintiff "waived" her rights to need based attorney fees and counsel, Plaintiff posits that she cannot waive statutory subject matter jurisdiction for either the trial or appellate court by indolence, oversight, quiescence, or consent.  Plaintiff's due process rights were violated and she was denied due process of the law pursuant to Family Law Code § 2030 when Defendant failed to hold the requested hearing.

10.     On January 24, 2020, Plaintiff filed a Petition for Rehearing to address the issue the Appellate Court failed to address denying Plaintiff of due process and equal protection of the law.  The Appellate Court denied Plaintiff's Petition for Rehearing on February 28, 2020.

11.     On February 14, 2020, Plaintiff filed a Petition for Review with the State Supreme Court and that Petition was denied on February 26, 2020.  See **Exhibit 1**.

12.     This is a civil action whereby Plaintiff prays for a temporary restraining order, declaratory judgment and injunctive relief enjoining Defendant, their agents, servants, employees, and those acting in concert with actual notice thereof that all the matters dealing with Community Property held on or after the requested motion for need based attorney fees pursuant to Family Law Code § 2030, *et seq.* and before Plaintiff's Civil Suit matters are fully adjudicated to be a nullity.  Plaintiff is entitled to the requested relief because Defendant has violated and continues to violate Plaintiff's rights under the Constitution and laws of the United States and continuing to fail to hold the mandatory hearing for need based attorney fees Defendant has violated and will further violate Plaintiff's rights under the Constitution and laws of the United States.

13.     This is a case in which Plaintiff posits the record reflects how she was effectively denied the right of "Substantive Due Process" and "Equal Protection" of the mandatory provisions of the State's Family Law Statutes without a hearing on her federally couched claims.  For example, Plaintiffs' statutory claims were presented during the judicial process but no decision was rendered on the merits and the trial court failed to follow, *inter alia* "Public Policy" in the implementation of the mandatory

provisions of Family Law Codes Sections 2030, *et seq.,* 1000(b)(2), and 2120 through 2129. Therefore, due to Plaintiff's indigency and due to the court's negligence in failing to hold a hearing for "Need based Attorney Fees", Plaintiff was forced into having to represent herself even though she knew nothing about Family Law (See **Exhibit 2** "Family Law Code Section 2030, *et seq.*") This shows, pursuant to state law, that the trial court not only abused its discretion, but was negligent in failing to hold the "Mandatory" hearing for need based attorney fees pursuant to Family Law Code § 2030 *et seq.,* in spite of the fact it knew Plaintiff was indigent and unrepresented in a very complex area of Civil Law and the other party was represented by counsel. (See *e.g.* Family Law Code § 2030(a)(1)&(a)(2); cf. *Mooney v. Superior Court* (2016) 245 CA4th 523, 529 [Family Law Code § 2030(e) regarding this Judicial Council statewide rule of court to implement Family Law Code § 2030; See also Cal. Rules of Court 5.427; cf. *Marriage of Holmgren* (1976) 60 Cal.App.3d 869, 873 [130 CR 440] and *Norris v. Norris* (1942) 50 Cal.App.2d 726, 735 [123 P.2d 847] [Holding: " . . . [where] the wife has inadequate funds to maintain the case in the trial court or to take an appeal, the husband is able to pay a reasonable sum, and neither the initial proceedings nor the appeal are without substantial merit, the trial court commits error in denying any allowance for fees and costs"]). In short, Plaintiff was denied her "Substantive Due Process" and "Equal Protection of the Law" rights in violation of the Fourteenth Amendment to the United States Constitution. Plaintiff further asserts this is so because the Family Law Court knowingly failed to follow, *inter alia*, this mandatory provisions set forth in Family Law Code § 2030, *et seq.,* Family Law Code § 1000(b)(2), and Family Law Code §§ 2120 through 2129. (See **Exhibit 1** "Petition for Review in the State Supreme Court, Review Denied; cf. *Vitek v. Jones* (1980) 445 U.S. 480, 488-491 [100 S. Ct. 1254] (Re: Protected property interest arising from state statutes showing Plaintiff was denied substantive due process and equal protection of state law statutes; cf. *Chapman v. Houston* 441 U.S. 600 (1979) page 608-609 [Re: Authorization of individual suits in federal court to vindicate the deprivation, under color of state law, "of any rights, privileges, or immunities secured by the Constitution of the United States."].

14.    As the State record reflects, Family Law Code § 2030, *et seq.* created an expectation that Plaintiff, who for the last 21 years, was a house wife without any legal experience in Family Law litigation, should not be forced into representing herself, while her ex-spouse was earning $10,000.00 to

$20,000.00 a month but refusing to make court ordered spousal and child support payments, was paying for representation of a high priced Family Law Attorney who had been practicing Family Law in the same court for the last 30 years and who had stated on the record he had a "Special Relationship" with the presiding judge. (See **Exhibit 5** "Reporter's Transcripts").

15.   Plaintiff's case shows that had the Family Law Court enforced Family Law Code subject to § 1000(b)(2), she would not have had to file a separate "Civil Law Suit" because the tort claims would have been litigated by the Family Law Court and the offsets/sanctions for those torts, such as **1.** Destruction of Plaintiff's online business; **2.**  Intentionally ruining Plaintiff's credit; **3.** False Property Claims; **4.** Theft of both checking accounts and community property; **5.** Concealment of over $115,000.00 of Income, and 6. Breach of Fiduciary Duty, among other torts that, had the court followed statutory law, should have been litigated in the Family Law Proceedings, leaving nothing in the equity of the family home her ex spouse could expect from selling it, without still owing Plaintiff in sanctions for these and other intentional torts as well as back child support and alimony.  (See **Exhibit 6** Cover page of Tort Claims filed in Plaintiff's Civil Suit in Case No. 30-2018-00986705-CU-FR-CJC.)

16.   Plaintiff posits that in accordance with state law, the court <u>must</u> ensure that each party has access to legal representation.   (See Family Law Code § 2030(a)(1).)   In this case, Plaintiff requested need based attorney fees but the court ignored her request and failed to hold a **"mandatory"** hearing and make the following findings:

  a.   Whether an award is appropriate; and

  b.   Whether there is a disparity in access to funds to retain counsel; and

  c.   Whether one party is able to pay for the legal representation of both parties.  If the findings demonstrate disparity in access and ability to pay, the court must order attorney fees and costs. (See Family Law Code § 2030(a)(2)&(b); <u>cf.</u> *Alan v. Superior Court* (2009) 172 CA 4th 238, 253. (Held: fees and costs may be made at any time "during the pendency" of any marital action Family Law Code § 2030(a)(1).)

17.   In this case now before the Court, Plaintiff posits that the trial court proceedings show that Defendant failed to hold the mandatory hearing pursuant to Family Law Code § 2030, *et seq*. and this not only violated the mandatory provisions set forth by Family Law statute 2030, *et seq.,* it violated

the "Judicial Council's" statewide rule of court to implement Family Law Code § 2030. (See Cal. Rules of Court 5.427; Note: this rule mandates a strictly a judicial duty that cannot be waived by Plaintiff and applies to attorney fees and costs based on financial need as described in Family Law Code § 2030, Family Law Code § 2032, Family Law Code § 3121, Family Law Code § 3357, and Family Law Code § 7605; See also California Rules of Court 527(a).)

18.    The Family Law Court abused its discretion when it failed to perform its "Mandatory Statutory Duty" to enforce Family Law Code § 2030, *et seq.* according to its terms and provisions and the court's failure prejudiced Plaintiff into having to represent herself without any experience in Family Law. The Family Law Court exceeded its jurisdiction by failing to perform its statutory duty every time it conducted a proceeding resulting in adverse consequences to Plaintiff and her children by placing their property in jeopardy simply because she was unable to adequately defend herself and her children's interests against an experienced Family Law Attorney during the proceedings and while her ex spouse was represented by council who has been practicing family law in the same court for over the last 30 years all during the time her ex spouse was enjoying one hundred percent of his monthly income of between $10,000 and $20,000 while refusing to pay court ordered spousal and child support. Based on the aforementioned issues, Plaintiff contends the issues before this Court evolves under statutes existing during the Family Law Process of how the Family Law Court abused its discretion by failing to perform its mandatory duty that has resulted in Plaintiff being denied "Substantive Due Process" and "Equal Protection of the Family Law Codes" commencing with Family Law Code § 2030, *et seq.* and despite Plaintiff's claims going uncontested and without a decision on the merits of her federally couched claims.

19.    Under advise of Plaintiff's attorney before he was fired for cause, and pursuant to the Family Law Code existing on the date Plaintiff entered into the Marriage Settlement Agreement, each party was required by law to file a "Declaration of Disclosure" on each party (See Family Law Code § 2104.) It was not until after firing her attorney because he improperly represented Plaintiff when he placed a lien on her property, instead of seeking his fees from her ex spouse according to statute, and after Plaintiff discovered it was "Public Policy" for each party to be represented by counsel to ensure each party was adequately represented and that her ex-spouse had intentionally omitted and concealed

over $115,000 of income from his "Preliminary Declaration of Disclosure" that Plaintiff made notice of these facts to the court and when the court stated "You haven't filed your civil suit yet", Plaintiff did so as expeditiously as she could under the circumstance while proceeding in pro se. (See Reporter's Transcripts of Jan. 28, 2018 - Motion to Vacate Judgment marked hereto as **Exhibit 7**; See also **Exhibit 6** "Tort Suit" denominated Case No. 30-2018-00986705 CU-FR-CJC and **Exhibit 3** - Family Law Code §§ 2120 through 2129.)  Plaintiff was again denied "Substantive Due Process" and "Equal Protection of Family Law Codes" commencing with §§ 2120 through 2129 and Family Law Code § 1000(b)(2), because the tort claims were to be litigated during the Family Law Process before any distribution of property could be made showing that the Family Law Court made a prejudicial error by allowing the process to continue before litigation of Plaintiff's tort claims depriving Plaintiff of a fair distribution of the community estate.  (See **Exhibit 3** "Family Law Codes §§ 2120 through 2129 and **Exhibit 4** Family Law Code § 1000(b)(2).)

20.    The "Family Law Court Record" shows Plaintiff was denied her statutory rights to have the tort claims litigated in the Family Law Court (See **Exhibit 6**.)  Instead, Plaintiff was deceived into believing she had to file a separate civil suit. (See **Exhibits** 3, 4, 6 & 7.)  Moreover, had the torts been adjudicated according to Family Law Code Sections 1000(b)(2) and 2120 through 2129, when Plaintiff brought the matter to the attention of the Family Law Court, it failed to enforce "Public Policy" so that the tort claims would be litigated in that court, the outcome may have been decidedly different and her property and its tax benefit might not ever have been placed in jeopardy.  Furthermore, Plaintiff claims it is one thing to make Plaintiff proceed to represent herself in a complex area of civil law and quite another set of facts to mislead Plaintiff into believing she had to file a separate lawsuit in the Superior Court's Civil Division. (See **Exhibit 7** - Reporter's Transcripts of Court Record of the Court's statement, constituting "Conclusive Evidence" of negligence for misleading Plaintiff into believing she had to file a separate Civil Suit in Direct conflict with Family Law Codes §§ 1000(b)(2) and 2120 through 2129.)

21.    It was the Family Law Court's responsibility to know Plaintiff was indigent and it was against "Public Policy", as well as the expressed provisions of Family Law Code § 2030, *et seq*; See also 2031(b) and California Rules of Court, Rule 5.427 and AB-939 @ page 14 § 13(f) citing Family Law Code § 3120 as to Plaintiff's due process claims whereby the Family Law Court's failure to

perform its statutory duties forced her to try and defend her rights in the Family Law process without counsel because she was indigent.) For example, there is no question plaintiff was denied her federally protected rights to due process and equal protection of the law when the Family Law Court failed to hold the mandatory hearing required and rule on Plaintiffs' motion pursuant to Family Law Code § 2031(b) within 15 days after the motion was filed for need based attorney fees but instead ignored her request and proceeded anyway. (See **Exhibit 1** cf. *Roldan v. Callahan & Blaine* (2013) 219 Cal.App. 4th 87, 94-95 [161 CR 3d 493], citing; *Martin v. Superior Court* (1917) 176 Cal. 289 [168 P. 135] [Re: California's long standing "public policy" of ensuring all litigants have access to the justice system for resolution of their grievances, without regard to their financial means]; cf. *Sabariego v. Maverick*, (1988) 124 U.S. 261 [60 S.Ct. 343] [Held: "A judgment of a court without hearing the party or giving him an opportunity to be heard is not a judicial determinate of his right and is not entitled to respect in any other tribunal".]; compare with **Exhibit 2** - "Family Law §§ 2030, *et seq.* and Family Law Code § 2031(b) and Family Law Code § 3121(a)-(f), AB-939, Stats 2010, Ch. 352 §§ 4 through 18.) As the history of this case shows, Plaintiff was denied the rights provided by statute and forced to try and defend herself and her property without the aid of an attorney all because the Family Law Court failed to perform its mandatory statutory duty to hold a need based attorney fee hearing pursuant to Family Law Code § 2030, *et seq.*, within the timeframe provided by statute. (See **Exhibit 2** cf. *In re Marriage of Carlsson*, 163 Cal.App. 4th 281, 283 [Re: Plaintiff's right to a hearing pursuant to Family Law Code § 2030, *et seq.]*).

22.    Plaintiff posits that under both State and Federal law, without a "full, fair, and impartial" hearing that allowed Plaintiff to present her evidence with counsel to set aside the "Marriage Settlement Agreement" for a breach thereon, in accordance with Family Law Code §§ 2120 through 2129, was not only judicial error, it was an abuse of the Family Law Court's discretion that denied her the right to:

(a)    Litigate the tort claims during the Family Law Process before any distribution of the community assets could be made at the time and in that Court. (See *Dusenbury v. U.S.* (2002) 534 U.S. 161, 167 [122 S.Ct. 694] [Re: Plaintiffs' Fourteenth Amendment Due Process Claim on the lawful enforcement of State Law]; cf. *Zablocki v. Redhail* (1977) 434 U.S. 374, 388 [98 S.Ct. 673] [Re: Defendant's failure to follow state law when Public Policy and Fam. Law Codes §§ 2030, *et seq.,*

1000(b)(2) & 2120 through 2129 "establishing a state process Defendant failed to follow destroying Plaintiff's entitlements in violation of the Fourteenth Amendments Substantive Due Process guarantee"; cf. *Zinermon v. Burch* (1990) 494 U.S. 113, 125 [110 S.Ct. 975] (quoting) *Daniels v. Williams* (1985) 474 U.S. 327, 331 [Re: the 14th Amend.'s bar to arbitrary, wrongful government action]; cf. *Vitek v. Jones, supra,* 445 U.S. @ 490-491 [Re: Defendants' failure to follow statutory policy; cf. *Chapman v. Houston* 441 U.S. 600 (1979) page 608-609 [Re: Authorization of individual suits in federal court to vindicate the deprivation, under color of state law, "of any rights, privileges, or immunities secured by the Constitution of the United States."];See also Exhibit 1 pages 9 to 10 [Re: Plaintiff's federal claim]); and

      (b)    Litigate and receive a decision on denial of substantive due process and equal protection of the Family Law Statutes and the mandatory evidentiary hearing to decide if: **1.** Plaintiff was competent enough in Family Law to protect her and her children's interests; and **2.** if "need based attorney fees' should be awarded and paid by her ex-spouse who was earning between $10,000 and $20,000 a month in commissions as a rare coin dealer for the last 13 years and was able to contribute to Plaintiffs' attorney costs. (See *District of Columbia v. Carter* (1973) 409 U.S. 418, 420, 426-429 [93 S. Ct. 602] [Re: federal courts control over state officials who refuse to enforce the law]; and

      (c)    Family Law Code's § 2030 mandatory requirements. (See *Main v. Thiboutot*, 448 U.S. 1 2-6 [100 S.Ct. 2502] (1980) [Re: Federal Court remedy against "anyone" who, acting under color of state law, deprives another of "rights, privileges, or immunities secured by the Constitution . . ."; as in the instant case where Plaintiff claimed she was denied her rights to her property that was being taken because she had no idea on how to defend her rights because the Family Law court failed to follow the statutory provisions in the Family Law process and she was without proper representation mandated by "Public Policy" and Family Law Code §§ 2030, *et seq.*]; cf. *Brown v. Merlo* (1973) 8 C.2d 855, 861-62 [506 P.2d 212] [Re; Cal. Const. Art. 1 § 7(a)(b) and the issue of how the Family Law Court's failure to provide equal application and due process in implementing the Family Law Codes has denied Plaintiff a statutory right as a federal question]; and

      (d)    Have the Tort Claims Plaintiff filed against her ex spouse fully litigated pursuant to Family Law Codes §§ 2120 through 2129, before any distribution of Community Property could be

made to ensure a fair distribution of the community estate. (See *In re Marriage of Buol* (1985) 39 C.3d 751, 762 [705 P.2d 354]; cf. *Robertson v. Willis* (1978) 77 C.A. 3d 358, 365, 369 [143 CR 523] [Re: Statute making community property liable for debts of either spouse contracted after marriage]; cf. *Boddie v. Connecticut* (1971) 91 S. Ct. 780, 789 [28 L.Ed. 2d 113, 122] [Held: "[A] state may not . . . preempt the right to dissolve this legal relationship scribed for doing so:' this includes having the torts fully litigated before distribution of any property [Emphasis added]; cf. *Monroe v. Pope* (1961) 81 S.Ct. 473, 475, 482 [365 U.S. 167] [Re: Misuse of power by Defendant made possible only because he was "clothed with authority of state law. . . "); and

(e)     Have Plaintiff's claims decided in a full hearing on the question of whether or not her ex spouse breached the Marriage Settlement Agreement and committed perjury in his preliminary disclosure statement and failed to disclose in a case that had Plaintiff been treated fairly, represented by a competent attorney, would have motioned the court for a hearing to present evidence of the concealment of income by her ex-spouse instead of filing a separate lawsuit in civil court. (See U.S. Const. 14th Amendment and State Const. Art. 1 § 7(a)(b); cf. *Lugar v. Edmonson Oil Co.* (1982) 102 S. Ct. 2744, 2747 [73 L.Ed. 2d 482, 489] [Re: State Action]; cf. *Brooks v. Small Claims Court* (1973) 8 C.3d 661, 669 [504 P. 2d 1249] [Re: Taking of Property prior to due process hearing with right to counsel"]).

23.     The results of Defendant's inaction to enforce the Family Law Statutes according to their terms and provisions, has placed Plaintiff in jeopardy of losing her rights and property and being defrauded out of her fair share of the community property including well over $115,000 of concealed income and property which does not account for the ex-spouse's actions to intentionally sabotage Plaintiff's ability to protect her properties, all because the Family Law Court abused its discretion in failing to enforce State Law and provide Plaintiff a hearing on her request for "Need Based Attorney Fees" prescribed by the statutory law and held within its time frame before the hearing on the motion to vacate the Marriage Settlement Agreement and to enforce the Court order to pay the monthly mortgage and other household expenses that included spousal and child support. (See *e.g* Family Law Code § 2104(c)(1); cf. *Marriage of Moore* (2014) 226 CA 4th 92, 101 [Re: Failure to disclose]).

24.    The Plaintiff seeks a declaration from this Court that Defendant has violated and continues to violate the Fourteenth Amendments to the United States Constitution and Title 42 U.S.C. 1983.  Plaintiff further seeks a temporary restraining order, and preliminary and permanent injunction requiring Defendant to refrain from further depriving Plaintiff her civil rights.  Plaintiffs also request costs and attorney fees.

25.    Plaintiff posits that her understanding of the "Rule of Law" is that whenever a statute imposes a legal duty, as shown in this case by Plaintiff's pleadings, violations of the statute setting forth that legal duty is conclusive evidence of negligence per se.  Moreover, when, as in this case, that duty, pursuant to Family Law Codes §§ 2030, *et seq.* and 2120 through 2129, are not performed, it violates the "long established"" doctrine expressed by the state's highest court quoting the principle from *Seymore v. Oelrich* (1909) 156 Cal. 782 [106 P. 88] [Held: Quoting from and early decision of the United States Supreme Court, it stated: "The vital principle is that he who by his language or conduct leads another to do what he would not otherwise have done shall not subject such person to loss or injury by disappointing the expectation upon which he acted.  It involves fraud and falsehood, and the law abhors both." (See 156 Cal. at page 795; See also Plaintiff's **Exhibit 7**.)

26.    Plaintiff posits that declarative and injunctive relief from this Court is both justified and proper because it is based on the proposition that discriminating enforcement of Family Law Code Sections 2030, *et seq.*, and 2120 through 2129 is conclusive evidence of negligence in a civil action in a case where the statutes were passed to protect the class of people (indigent and those who cannot afford an attorney) of which Plaintiff is a member.  Furthermore, other courts, including California, treat such violation as giving rise to presumption of negligence causing harm that can only be corrected by remanding the matter back to the Family Law Court enjoining and declaring all other proceedings dealing with community property matters decided after Plaintiff's family law § 2030, *et seq.* motion that was filed on September 13, 2017 and ignored by the Court to be null and void and that a different judge be appointed to hold the mandatory hearing. (See Plaintiff's Request for Relief, *infra*).

/ / /

/ / /

/ / /

**COUNT ONE**
**VIOLATION OF FOURTEENTH AMENDMENT**
**SUBSTANTIVE DUE PROCESS**

27.    Plaintiff incorporates by reference paragraphs 1 through 26 as if fully restated here and further adds the following.

28.    A proceeding for purpose of obtaining state authority to decide issues involving custody, support, and division of property in a dissolution of marriage is a proceeding for state authorization to deprive Plaintiff of her life, liberty, and property.

29.    Defendant failed to hold the mandatory hearing for need based attorney fees so that Plaintiff could be adequately represented in the critical hearings and proceedings for state authority to take away support and property.

30.    Defendant failed to hold the mandatory hearing for need based attorney fees so that Plaintiff's legal rights could be represented in the proceedings for state authority to take away support and property.

31.    Defendant's total failure to hold the mandatory hearing for need based attorney fees was a violation of Plaintiff's right to substantive due process as guaranteed by the Fourteenth Amendment to the United States Constitution.

**COUNT TWO**
**VIOLATION OF FOURTEENTH AMENDMENT**
**RIGHT TO EQUAL PROTECTION OF THE LAW**

32.    Plaintiff incorporates by reference paragraphs 1 through 32 as if fully restated here and further states the following.

33.    Family Law Code § 2030, *et seq.* mandates that after a request for need based attorney fees, the Court must hold the hearing within fifteen (15) days before the hearing on the request for order pursuant to public policy, however, Defendant ignored Plaintiff's request denying equal protection of the law despite the Judicial Council mandate as set forth in Cal. Rules of Court 5.427.

34.    Defendant denied Plaintiff a "full, fair and impartial" enforcement of the state family law codes violating Plaintiff's rights to equal protection of the law under the Fourteenth Amendment to the United States Constitution.

///

**COUNT THREE**
**VIOLATION OF FOURTEENTH AMENDMENT**
**DUE PROCESS RIGHT TO A FAIR AND IMPARTIAL HEARING**

35.    Plaintiff incorporates by reference paragraphs 1 through 34 as if fully restated here and further states the following.

36.    Defendant purported to act as the impartial judge in the same proceeding for state authority to take away child support, alimony, and community property.

37.    Once Defendant violated Plaintiff's request for need based attorney fees and failed to hold the mandatory hearing, it became impossible for Defendant to maintain his role as an impartial judge in order to review his own decisions that were decided in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

## IV.    REQUEST FOR RELIEF

1.    Plaintiff pleads this Court to find and declare that in violation of the laws for the State of California and as a citizen of the United States, Plaintiff has had her property rights placed in jeopardy because she was denied due process and equal protection of the law in violation of the Fourteenth Amendment to the United States Constitution; and

2.    That this Court find and declare that a remand back to the Family Law Court to a different judge to perform the mandatory duties required by Family Law Codes Sections 2030, *et seq.*, and 2120 through 2129 as proper and necessary to enforce those State Laws according to their terms and provisions; and

3.    That this Court find and Declare that all the matters dealing with Community Property, Spousal Support, and Child Support held on or after the requested motion for need based attorney fees filed on September 13, 2017 pursuant to Family Law Code Section § 2030, *et seq.* and before Plaintiff's Civil Suit matters are fully adjudicated to be a nullity; and

4.    Any other relief that this Court deems necessary to protect Plaintiffs' rights and serve the interest of justice.

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper

purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11. I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file the Clerk's Office may result in the dismissal of my case.

I declare under the laws of the United States of America that the foregoing is true and correct and the copies of Exhibits attached hereto are true and correct copies of those documents referenced in this Complaint marked Exhibits 1 through 7. Executed this 15th day of April, 2020.

Respectfully submitted,

By: _____

Alicia Marie Richards

# EXHIBIT 1

SUPREME COURT
F I L E D

Court of Appeal, Fourth Appellate District, Division Three - No. G055927    FEB **2 6** 2020

S260675

Jorge Navarrete Clerk

# IN THE SUPREME COURT OF CALIFORNIA

Deputy

**En Banc**

In re Marriage of ALICIA MARIE and RYAL W. RICHARDS.

ALICIA MARIE RICHARDS, Appellant,

v.

RYAL W. RICHARDS, Respondent.

The petition for review and application for stay are denied.

CANTIL-SAKAUYE

*Chief Justice*

Supreme Court of California

Jorge E. Navarrete, Clerk and Executive Officer of the Court

Electronically RECEIVED on 2/14/2020 on 12:30:31 PM

Supreme Court of California

Jorge E. Navarrete, Clerk and Executive Officer of the Court

Electronically FILED on 2/14/2020 by Tao Zhang, Deputy Clerk

S260675

S_____

## **REQUEST FOR TEMPORARY STAY**

# IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

In re the Marriage of RYAL W. RICHARDS and ALICIA MARIE RICHARDS.

RYAL W. RICHARDS,
    Respondent,
    v.

ALICIA MARIE RICHARDS,
    Appellant.

## PETITION FOR REVIEW

After an Unpublished Decision by the
Fourth District Court of Appeal, Division Three
Case No. G055927
(714)571-2600

Affirming in Full a Stipulated Judgment Entered by the Superior Court of
the State of California County of Orange, Case No. 15D009634
Honorable Linda L. Miller, Presiding, Dept. L74
(657) 622-5566

Alicia Marie Richards
351 Catalina Drive
Newport Beach, CA 92663
(949) 813-6138
Appellant
Self-Represented

18

CERTIFICATE OF INTERESTED ENTITIES OF PERSONS

(California Rules of Court, Rule 8.208)

Interested entities of persons required to be listed

Under rule 8.208 are as follows:

1. Gregory Remsen, Trustee of the Remsen Family Trust.

2. Lawrence Remsen, contractual agreement regarding the Cain Family Trust and the Remsen Family Trust.

3. Jonathan Richards, financial interest the Remsen Family Trust.

(California Rules of Court, Rules 8.208(d)(3))

I undersigned certifies that the above listed persons have a financial or other interest in the outcome of the proceedings that the justices should consider in determining whether to disqualify themselves as defined in rule 8.208(e)(2).

Dated: February 14, 2020

Alicia Marie Richards
Plaintiff and Appellant in Pro Per

# TABLE OF CONTENTS

Pgs.

PETITION FOR REVIEW coverpage . . . . 1

Certificate of Interested Parties . . . . . 2

TABLE OF CONTENTS . . . . . . 3

TABLE OF AUTHORITIES. . . . . . 5

PETITION FOR REVIEW . . . . . . 8

I.      IDENTITY OF THE PARTIES . . . . 9

II.     COURT OF APPEALS DECISION . . . 9

III.    ISSUES PRESENTED . . . . . 9

        Issue 1 . . . . . . . 9

        Issue 2 . . . . . . . 10

        Issue 3 . . . . . . . 11

IV.     GROUNDS FOR A STAY . . . . . 11

V.      WHY REVIEW SHOULD BE GRANTED . . 12

VI.     INTRODUCTION . . . . . . 14

VII.    BACK GROUND AND STATEMENT
        OF THE CASE . . . . . . 16

VIII.   ARGUMENT . . . . . . 19

20

## TABLE OF CONTENTS cont.

Pgs.

A.   REVIEW IS IMPORTANT TO ANSWER
     AN IMPORTANT QUESTION AS TO
     WHETHER THE FAMILY LAW COURT'S
     MANDATORY DUTY TO HOLD A HEARING
     ON A REQUEST FOR NEED BASED ATTORNEY
     FEES CAN BE WAIVED WITHOUT THE TRIAL
     COURT HOLDING THE HEARING TO MAKE
     THE REQUIRED FINDINGS   .   .   .   .   21


B.   REVIEW IS IMPORTANT TO ANSWER
     AN IMPORTANT QUESTION AS TO
     WHETHER THE SALE OF THE FAMILY
     HOME IS RES JUDICTA .   .   .   .   .   24

IX.  CONCLUSION   .   .   .   .   .   .   26

X.   VERIFICATION   .   .   .   .   .   .   27

CERTIFICATE OF COMPLIANCE   .   .   .   .   28

EXHIBIT A  - OPINION OF THE COURT OF APPEALS
            FOURTH APPELLATE DISTRICT,
            DIVISION THREE .   .   .   .   .   29-66

EXHIBIT B – ORDER DENYING REHEARING   .   .   67-68

PROOF OF SERVICE   .   .   .   .   .   .   69

21

# TABLE OF AUTHORITIES

**Pgs**

*Alan v. Superior Court*
    (2009) 172 California App. 4th 238, **251**
    [91 California Rptr. 3d 241 .   .   .   .   14

*In Marriage of Borson*
    (1974) 37 California App.3d 532,**639**   .   .   20

*In re Marriage of Davis*
    (1980) 113 Cal.App.3d 485, 488 .   .   .   .   25

*In re Marriage of Guilardi*
    (2011) 200 California App. 4th 770, **774-775**   .   .   22

*In re Marriage of Joseph*
    (1990) 217 California App. 3d 1277, **1284-1285**   .   21

*In re Marriage of Keech*
    (1999) 75 California App.4th 860 .   .   .   .   19

*In re Marriage of Shimkus*
    (2016) 244 California App. 4th 1262, **1279-1280**   .   20

*Marriage of Carlsson*
    (2008) 163 CA 4th 281, **292**   .   .   .   20

*Marriage of Cheriton*
    (2001) 92 CA 4th 269, **318** .   .   .   .   20

*Marriage of Dietz*
    (2009) 176 CA 4th **387,406**   .   .   .   20

*Marriage of Huntington*
    (1992) 10 CA4th **1513**   .   .   .   .   20

*Marriage of Tharp*
    (2010) 188 CA 4th **1295, 1310, 1314, 1318-1319**   .   20

*Marriage of Umphrey*
    (1990) 218 CA3d @ p. **655**   .   .   .   .   20

22

**TABLE OF AUTHORITIES cont.**

Pgs

**CASES**

*Mooney v. Superior Court*
          (2016) 245 CA 4th 523 @ **529** .      .      .      .      .      19, 21

*Resnick v. Superior Court*
          (1986) 185 CA3d @ p. **637** .      .      .      .      .      20

*Rubenstein v.Rubenstein*
          (2000) 81 CA4th 1131, 1140 @ p. **1145** .      .      .      24

*Sharples v. Sharples (In re Sharples)*
          (2014) 223 California App.4th **160**      .      .      .      14, 23

**STATUTES**

Civil Code § 826      .      .      .      .      .      .      .      20

Code of Civil Procedure § 473      .      .      .      .      .      10, 16

Evidence Code § 352      .      .      .      .      .      .      20

Evidence Code § 354      .      .      .      .      .      .      20

Family Code § 217(a)      .      .      .      .      .      .      20

Family Law Code §1100, *et seq*      .      .      .      .      .      20

Family Law Code § 2120 *et seq.*      .      .      .      .      .      16

Family Law Code § 2122(a)      .      .      .      .      10, 25, 26

Family Law Code § 2122 *et seq.*      .      .      .      10, 24, 25

Family Law Code § 2030(a)      .      .      .      .      .      14, 21

Family Law Code § 2030(a)(1)      .      .      .      .      14, 19, 21

23

## TABLE OF AUTHORITIES cont.

Pgs

### STATUTES cont.

Family Law Code Section 2030(a)(2)    .    .    .    14, 15, 19, 21

Family Law Code § 2030 *et seq.*    .    .    .    14,15, 19, 23, 26

Family Law Code § 2032    .    .    .    .    .    .    21

Family Law Code § 4320    .    .    .    .    .    .    21
Family Law Code§ 7605    .    .    .    .    .    .    26

### CALIFORNIA RULES OF COURT

California  Rules of Court, Rule § 5.113(a)    .    .    .    20

California  Rules of Court, Rule 5.427    .    .    .    .    20, 26

California  Rules of Court, Rule 8.208    .    .    .    .    2

California  Rules of Court, Rules 8.208(d)(3)    .    .    .    2

California  Rules of Court, Rule 8.208(e)(2)    .    .    .    2

California  Rules of Court, Rule 8.500    .    .    .    .    8

# IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

In re the Marriage of RYAL W. RICHARDS and ALICIA MARIE RICHARDS.

RYAL W. RICHARDS,
  Respondent,
  v.

ALICIA MARIE RICHARDS,
  Appellant.

## PETITION FOR REVIEW

**TO THE HONORABLE CHIEF JUSTICE, AND TO THE HONORABLE ASSOCIATES JUSTICES OF THE SUPREME COURT OF THE STATE OF CALIFORNIA:**

Pursuant to Rule 8.500, California Rules of Court, ALICIA MARIE RICHARDS, hereinafter "(Petitioner)", hereby petitions this Court to grant review of the Court of Appeal, Fourth Appellate District, Division Three's Opinion filed on January 9, 2020 wherein it affirmed in full the order denying Petitioner's motion to vacate the stipulated judgment entered on January 26, 2018. A copy of the Court of Appeal's Opinion in case number G055927 is attached hereto as **Exhibit A** pages 29-66.

## I.    IDENTITY OF THE PARTIES

Petitioner is Alicia Marie Richards and Respondent in the dissolution of marriage entitled *In re Marriage of Richards*, Case No. 15D009634 and Appellant in Appeal Case No. G055927. Respondent is Ryal W. Richards and Petitioner in the dissolution of marriage entitled *In re Marriage of Richards*, Case No. 15D009634 and Respondent in Appeal Case No. G055927.

## II.    COURT OF APPEALS DECISION

Petitioner seeks review of the Court of Appeals Opinion filed on January 9, 2020 and the rehearing denied on February 6, 2020 which affirmed in full the post judgment order denying Petitioner's motion to vacate the stipulated judgments of March 2, 2017 and June 16, 2017. A copy of the Opinion is attached hereto as **Exhibit A** pages 29 to 66 and the Order denying rehearing is attached as **Exhibit B** at page 67. See also copy of Superior Court Order denying Petitioner's Motion to Vacate @ Vol. 7 @ page 1836 in the clerk's transcripts.

## III.    ISSUES PRESENTED

**Issue No. 1**

- Whether the Court of Appeals committed fundamental error and abused its discretion in holding that Petitioner "waived" her right to need based attorney fees without the court making the required findings on the merits and whether Petitioner was denied due

process and equal protection of the law by the Family Law Court's failure to hold the mandatory hearing to make the required findings and whether everything after that point in time became void as a matter of law and should be reversed. (Opinion @ page 56)

**Issue No. 2**

- Whether the Court of Appeals committed obvious error in affirming the order denying Petitioner motion to vacate the stipulated judgment brought pursuant to family law code 2122 et seq. and Civil Code of Procedure 473 denying Petitioner due process and equal protection of the law by being forced to file her unadjudicated claims in the Civil Court to avoid the statute of limitations bar instead of having her claims adjudicated in the family law court.

(Opinion @ page 58 cf. Opinion @ page 60)

**Issue No. 3**

- Whether the Court of Appeals committed obvious error in stating that the sale of the family home was Res Judicata without determining the offsets and the fair distribution of the property and knowing that Petitioner's Family Law Code 2122 *et seq.* fraud claims are still pending in civil court and Respondent may have no equity to claim.

(Opinion @ page 62) cf. Appellant's Opening Brief @ page 10.

10

27

These important issues should be reviewed and settled by this Court now because the Court of Appeals made their decision not to reverse the order denying the motion to vacate the stipulated judgments on an issue that was not brought up by either party and denied rehearing to allow the parties to brief the issue as to whether Petitioner could "waive" her right to need based attorney fees without the trial court conducting the mandatory hearing and whether everything that followed after should be reversed and considered void because of the court's due process violation when it failed to hold the mandatory hearing on Petitioner's request for need based attorney fees and led her to believe her fraud claims were to be filed in civil court where they are now pending instead of having them litigated in the family law court.

## IV.    <u>GROUNDS FOR A STAY</u>

A stay of further proceedings in the Trial Court and the Appellate Court is necessary to preserve the status quo and thereby provide this Court with sufficient time to consider this petition.  This Court should preserve the status quo by ordering a stay of further proceedings in both the Trial Court and the Court of Appeals pending the final resolution of this petition for review concerning whether Petitioner was denied due process and equal protection of the law when the trial court failed to hold the mandatory hearing to determine need based attorney fees and whether Petitioner could "waive" her right without the trial court holding the

mandatory hearing and whether all the orders that followed the trial court's violation of due process are void and should be reversed.

## V.    <u>WHY REVIEW SHOULD BE GRANTED</u>

This case presents important issues on violations of due process and equal protection of the family law statutes and affects virtually all pro se litigants being forced to adjudicate their claims in family law court and who have requested need based attorney fees so they can be adequately represented at the hearing on their contested claims. Each conflicting decision will, in turn, bring wasteful expense and uncertainty and a denial of due process and equal protection of the law causing a miscarriage of justice and an abuse of discretion in the trial and appellate courts. Granting this Petition would prevent such waste, promote uniformity of decisions, and settle these important questions of law that affects all unrepresented litigants forced into family law court to have their claims adjudicated and who have requested a hearing take place for need based attorney fees before the hearing on the disputed claim and instead their request gets ignored and they are forced to proceed pro se in a specialized law against another party who is represented by council denying them due process and equal protection of the law. This is clearly a miscarriage of justice and a denial of due process and equal protection of the law for the trial court and the appellate court not to follow its own judicial council mandate and is before this court on first impression.

In sum, not only is the Court of Appeal's Decision not to reverse the order denying the stipulated judgment erroneous (for reasons discussed more below), but it violates due process and equal protection of the law because it was based on a claim not brought up by either party and they denied rehearing to allow briefing on the issue of whether Petitioner could "waive" her rights to need based attorney fees without the trial court holding the mandatory hearing on the merits. Unless this Court corrects this violation now more litigants proceeding in pro se will be denied their due process rights and equal protection of the law. Review should be granted to resolve these questions of widespread public importance and to establish a uniform rule applicable to all family law courts in this state to ensure that unrepresented litigants being forced to litigate their claims in a specialized family law court and who have requested need based attorney fees are not being denied due process and equal protection of the law by the trial court failing to hold the mandatory hearing pursuant to statute. The Court of Appeals abused its discretion by not vacating the order denying the motion to vacate and remanding the matter back to the trial court to hold the mandatory hearing on need based attorney fees. By granting review it will promote uniformity of decisions already made by numerous other Appellate Courts and promote due process and equal protection of the law.

## VI.    INTRODUCTION

Family Law Court's have a mandatory duty to hold a hearing to determine a request for need based attorney fees so that each of the parties have the financial resources to present their case adequately.  The purpose "is not the redistribution of money from the greater income party to the lesser income party, but rather 'parity: a fair hearing with two sides equally represented.'" *Alan v. Superior Court* (2009) 172 California App. 4th 238, 251[91 California Rptr. 3d 241].  "The record must reflect that the trial court exercised its discretion and considered the pertinent statutory factors. The trial court's failure to exercise discretion is itself an abuse of discretion." *Sharples v. Sharples (In re Sharples)*, 223 California App.4th 160 (California  Ct. App. 2014).  "Under section 2030, "[w]hen a request for attorney's fees and costs is made, the court shall make findings on whether an award of attorney's fees and costs under this section is appropriate, whether there is a disparity in access to funds to retain counsel, and whether one party is able to pay for legal representation of both parties. Family Law Code 2030, subd (b)." *Sharples v. Sharples (In re Sharples)*, 223 California App.4th 160, **168** (California  Ct. App. 2014).

In the instant case, Petitioner requested need based attorney fees in her request for order FL-300 form to vacate the stipulated judgments, attached the FL-319 form and the FL-158 form declaring that she requested $10,000 to hire an attorney to represent her at the hearing on the motion to

vacate. The trial court abused its discretion by failing to make the findings required by Family Law Code Sec. 2030, *et seq.* and the Appellate Court failed to reverse the order denying Petitioner's motion to vacate the stipulated judgment based on the trial court's error to first hold an evidentiary hearing on Petitioner's request for need based attorney fees so that she could be adequately represented at the hearing and had the family law court held the required hearing, the stipulated judgment would have been vacated based on Ryal W. Richards hereinafter "(Respondent's)" breach of the stipulated judgment and Petitioner's fraud claims pending in civil court instead of being litigated in the family law court. See Vol. 7 Clerk Transcripts @ page 1881-1883 cf. Appellants Opening Brief @ p. 66 and Appellant's Reply Brief at page 16. See also Petitioner's supporting record referencing Vol. 4 CT @ page 1133 to page 1136; cf. Appellant's Opening Brief @ pages 22, 38, 39, 42, 64, 63 and 66 as well as Appellant's reply brief at pages 16, 19, 36, 37, 39, and 40, referencing again her request for need based attorney fees. The Appellate Court erred by stating that Petitioner not only waived her right to need based attorney fees but also stated Petitioner failed to file FL-319 with her request for need based attorney fees. These claims were not briefed by either party and Petitioner was denied rehearing to submit supplemental briefing on the issue as to whether she could have or had the opportunity to waive her rights to need based attorney fees without the court ever holding the mandatory hearing

on Petitioner's request. (Opinion @ page 56 cf. Exhibit B – Order Denying Petition for Rehearing).

## VII.  BACK GROUND AND STATEMENT OF THE CASE

This case involves a denial of due process and equal protection of the law when the family law court ignored Petitioner's request for need based attorney fees without holding the mandatory hearing and making the required findings forcing her to proceed pro se against the other party who was represented by council. See Appellant's Opening Brief @ page 66 cf. Vol. 5 CT @ pages 1264-1330 and Vol. 7 Clerk Transcripts @ page 1881-1883 cf. Appellant's Reply Brief @ page 16.

The parties entered into a stipulated judgment on March 2, 2017 and June 16, 2017. On July 7, 2017, Petitioner fired her attorney for not properly representing her interests. On September 13, 2017, Petitioner filed a motion to vacate the stipulated judgments entered into on March 2, 2017 and June 16, 2017 [dealing with custody, spousal and child support and some waivers and allowed Petitioner to refinance the family home or sell it – it did not divide any of the assets or debts or deal with any of the offsets] pursuant to Family Code Sections 2120, *et seq.* and Civil Code of Procedure Section 473 and requested a hearing to be held before the hearing on the motion to vacate for need based attorney fees so that she could be adequately represented at the hearing. See Vol. 7 CT @ pages 1881-1883 cf. Appellants Opening Brief @ p. 66 and Appellant's Reply

33

Brief at page 16. The Family Law Court ignored Petitioner's request for need based attorney's fees and proceeded anyway without determining whether Petitioner could represent herself and adequately present her claims against her ex spouse's attorney who has practiced family law in the same court for over thirty years. On January 26, 2018, the Family Law Court denied Petitioner's motion to vacate the stipulated judgment without holding an evidentiary hearing for attorney fees and allowing her witnesses to testify and enter her evidence on her claims denying Petitioner due process and equal protection of the law. See Vol. 7 CT @ pages 1836-1837. (Opinion @ page 59 cf. Request for Rehearing on misstatements of facts in the Appellate Court's Opinion regarding the Trial Court's continuance made without conferring with Petitioner to a date her witnesses were not available and the trial court denied Petitioner's request for a continuance thereafter so her witnesses could testify and she could enter her evidence. The trial court denied the continuance and would not allow Petitioner to enter her evidence and Respondent was taking the Fifth Amendment and refusing to answer. Petitioner was denied an evidentiary hearing to determine need based attorney fees, have witnesses testify and enter her evidence and the outcome of the motion would have been completely different if she was represented by council because her attorney would have demanded an evidentiary hearing and Petitioner's claims. would have been litigated in family law court instead of being forced into

34

civil court because family law attorney's know that all claims dealing with the dissolution of marriage belong in family law court. However, Petitioner did not know this and was led to believe her claims should be litigated in civil court where they are now pending. See Appellant's Opening Brief at page 66 cf. Vol. 6 CT @ page 1782 cf. Vol. 7 CT @ page 1945-1950.

On January 29, 2018, Petitioner filed an appeal on the trial court's post judgment order denying her motion to set aside without first holding the mandatory hearing on her request for need based attorney fees. See Vol. 7CT @ pages 1878-1880 cf. Appellant's Opening Brief @ page 31.

On January 9, 2020, the Fourth District Court of Appeals, Division Three issued its Opinion denying Petitioner's appeal stating that she waived her rights to need based attorney fees. (Opinion @ page 56) On January 24, 2020, Petitioner filed a request for rehearing because the issue of whether Petitioner could waive her right or did waive her right to need based attorney fees had not been briefed by either party and Petitioner requested supplemental briefing on the issue of waiver. (See Petition for Rehearing Filed on Jan. 24, 2020) The Court of Appeals denied Petitioner's request for rehearing on February 6, 2020. See **Exhibit B**. Now the issue of whether Petitioner could waiver her right or did waive her right to need based attorney fees without the trial court ever holding the mandatory hearing is before this court to be decided.

35

# VIII.  **ARGUMENT**

This petition presents the simple question of whether Petitioner can waiver her rights or did waiver her rights to need based attorney fees without the family law court ever holding the mandatory hearing to make the required findings pursuant to Family Code section 2030 *et seq*. and whether everything that followed should be considered void because of the first due process violation when the Family Law Court failed to hold the mandatory hearing and make the required findings pursuant to Family Law Code 2030 <u>et seq.</u>  It was a denial of due process for the Family Law Court to ignore Petitioner's request for need based attorney fees and the appellate court erred by failing to remand this case back to the trial court to hold the hearing and everything after should be reversed or void because of the trial court's first violation of due process.  However, that is not what happened in this case.  Instead the Court of Appeals held in their Opinion that because the Family Law Court failed to conduct a hearing on Petitioner's need based attorney fee request, the Family Law Court must have considered Petitioner's request "waived" without the Family Law Court ever holding the mandatory hearing and making the required findings pursuant to Family Law Code Sec. 2030 *et seq.* and is in direct conflict with numerous court of appeal opinions.  <u>See</u> Family Law Code Section 2030(a)(1) and Family Law Code Section 2030(a)(2); *Mooney v. Superior Court* 245 CA 4th 523 @ **529** (2016) ;*In re Marriage of Shimkus* (2016)

244 California App. 4th 1262, **1279-1280**; California Rules of Court 5.427;
*In Marriage of Borson* (1974) 37 California App.3d 532,639; *Marriage of
Dietz* (2009) 176 CA 4th **387,406**; *Marriage of Cheriton* (2001) 92 CA 4th
269, **318**; *Marriage of Huntington* (1992) 10 CA4th **1513**; *Marriage of
Tharp* (2010) 188 CA 4th **1295, 1310, 1314, 1318-1319**;Civil Code §826;
Family Code §217(a); California Rules of Court § 5.113(a); Evidence Code
§§352, 354, & Family Law Code §1100, *et seq.* cf. *Marriage of Carlsson,*
(2008) 163 CA 4th 281, **292;** cf. Vol. 4 CT @ pages 1117-1158; Vol. 5 CT
@ pages 124-1332; Vol. 5 CT @ pages 1378-1389; Vol. 5 CT @ pages
1451-1480; Vol. 6 CT @ pages 1646-1647; Vol. 6 CT @ pages 1507-
1530; Vol. 6 CT @ pages 1667-1757; Vol. 6 CT @ pages 1647-1647; Vol.
7 CT @ pages 1806-1832; & Vol. 7 CT @ pages 1881-1983; cf. *Rubenstein
v.Rubenstein,* (2000) 81 CA4th @ p. **1145;** cf. *Marriage of Umphrey,*
(1990) 218 CA3d @ p. 655 [Re: equitable relief]; cf. *Resnick v. Superior
Court* (1986) 185 CA3d @ p. 637.

    Petitioner respectfully request review on Court of Appeals error in
its Opinion where it stated that Petitioner waived need based attorney fees
without the court holding the mandatory hearing to make the required
findings and whether all the orders made thereafter should be reversed and
considered void because of the trial Court's due process violation by failing
to hold the mandatory hearing on Petitioner's request for need based
attorney fees to be held before the motion on the disputed claims.

**A.    REVIEW IS IMPORTANT TO ANSWER AN IMPORTANT QUESTION AS TO WHETHER THE FAMILY LAW COURT'S MANDATORY DUTY TO HOLD A HEARING ON A REQUEST FOR NEED BASED ATTORNEY FEES CAN BE WAIVED WITHOUT THE TRIAL COURT HOLDING THE HEARING TO MAKE THE REQUIRED FINDINGS**

"Under section 2030, subdivision (a): 'During the pendency of a proceeding for dissolution of marriage. . ., the court may, upon (1) determining an ability to pay and (2) consideration of the respective needs and incomes of the parties in order to ensure that each party has access to legal representation to preserve all of the party's rights, order any party . . . to pay the amount reasonably necessary for attorney's fees and for the costs of maintain or defending the proceeding." (Emphasis added.)  Under Section 2032: "(a) The court may make an award of attorney fees and costs under Section 2030 . . . where the making of the award, and the amount of the award, are just and reasonable under the relative circumstances of the respective parties. (b) In determining what is just and reasonable under the relative circumstances, the court *shall* take into consideration the need for the award to enable each party, to the extent practical, to have sufficient financial resources to present the party's case adequately, taking into consideration, to the extent relevant, the circumstances of the respective parties described in Section 4320 [the factors for determination of "permanent spousal support"]. ." *In re Marriage of Keech*, 75 California App.4th 860 (California  Ct. App. 1999); *Mooney v. Superior Court* 245

38

CA 4th 523 @ **529** (2016) ["Because section 2030 requires the court to make findings regarding the existence of a disparity in access and ability to pay and states that the court shall make an order awarding attorney fees and costs if its findings demonstrate this disparity, the court's failure to make such findings constitutes reversible error."]

Petitioner respectfully request review on this important question as to whether a person who has been forced to litigate their claims in family law court can waive need based attorney fees without the court ever holding the mandatory hearing to make the required findings and whether all the orders made thereafter should be reversed and considered void because of the trial Court due process violation by failing to hold the mandatory hearing on the request for need based attorney fees.  Parties to a dissolution proceeding or to an action relating to a dissolution judgment may waive need based attorney fees pursuant to a marital settlement agreement, however, in this case, need based attorney fees were not waived.  Further, a person cannot "waive" fees related to child custody and support matters. See I*n re Marriage of Guilardi* (2011) 200 California App. 4th 770, 774-775; *In re Marriage of Joseph* (1990) 217 California App. 3d 1277, 1284-1285 [parties cannot waive statutory authorization of awards of attorney fees relating to child custody or support].

Further, the appellate court's "mistaken understanding that form FL-319 was mandatory" was flawed.  Id. @ p. 168.  The trial court failed to hold a

*39*

hearing to consider Petitioner's request for need based attorney fees on the merits and the Appellate Court failed to consider the fact that even though not mandatory, Petitioner had filed FL-319 along with her request for need based attorney fees and also attached FL-158 and the stipulated judgment should have been reversed because the Trial Court failed to make the required findings pursuant to Family Code 2030 *et seq*. *Sharples v. Sharples (In re Sharples)*, 223 California App.4th 160, **168** (California Ct. App. 2014).

Multiple highly experienced appellate panels have previously found that it is a denial of due process and equal protection of the law when the family law court fails to hold the mandatory hearing on a request for need based attorney fees and the Court of Appeals erred by failing to set the order aside and remanding the case back to the trial court to conduct a hearing on Petitioner's request for need based attorney fees. In addition to the Family Law Court failing to vacate the judgment and allow an evidentiary hearing so Petitioner's claims could be adjudicated in the family law court instead of being led to believe she must file them in civil court and had the trial court held the hearing on need based attorney fees, petitioner's claims would have been litigated in the family law court and the stipulated judgment would have been vacated.

Petitioner respectfully request review on the Court of Appeals error in its Opinion stating that Petitioner waived her rights to need based attorney

40

fees without the court holding the mandatory hearing to make the required

findings and whether all the orders made thereafter should be reversed and

considered void because of the trial Court's due process violation by failing

to hold the mandatory hearing on Petitioner's request for need based

attorney fees to be held before the motion on the disputed claims.

## B.    REVIEW IS IMPORTANT TO ANSWER AN IMPORTANT QUESTION AS TO WHETHER THE SALE OF THE FAMILY HOME IS RES JUDICTA

Petitioner respectfully requests review on this important question as

to whether the sale of the family home can be considered res judicata when

Petitioner's fraud claims brought pursuant to Family Law Code 2122 et seq.

are still pending in civil court and Petitioner may have no equity to claim.

(Opinion @ page 60 cf. Appellant's Opening Brief @ pp. 36, 50, 57, 60, 61,

63)

A motion to vacate a stipulated judgment is "controlled by Family

Code 2122" which provides a one year statute of limitations for an action to

vacate a judgment based on fraud and perjury." "The remedy under the

statute is the setting aside the judgment, not a tort action for concealment of

community assets." *Rubenstein v. Rubenstein*, 81 California App.4th 1131

(California Ct. App. 2000). However, in this case, Petitioner brought a

motion to vacate and the trial court refused to schedule an evidentiary

hearing and allow Petitioner's claims to be adjudicated denying petitioner

due process of the family law codes and forcing Petitioner to file and

litigate her unadjudicated claims in civil court. Res judicata and Collateral
estoppel do not bar a new action to determine interest in family home. *In re
Marriage of Davis*, 113 Cal.App.3d 485, 488 (Cal. Ct. App. 1980)

A highly experienced trial judge answer to res judicata is "No" stating
"Family Code section 2122(a) provides an exception to Res Judicata, and
depends on factual issues, *i.e.* 'when plaintiff did discovery or should have
discovered the fraud." *Rubenstein v. Rubenstein*, 81 California App.4th
1131, 1140 (California Ct. App. 2000). Therefore, the Court of Appeals
erred in stating that the disposition of the family home was "res judicata."
Petitioner requests review of the Court of Appeals error and had the family
law court held the hearing on the need based attorney fees before holding
the hearing on the motion to vacate, Petitioner's claims would have been
adjudicated in the family law court instead of being forced to file them in
civil court where they are now pending and there would have been no
appeals. Therefore, the sale of the family home cannot be considered res
judicata because Petitioner fraud claims brought pursuant to Family Law
Code 2122 et seq. are still pending in civil court and Petitioner may have no
equity to claim. (Opinion @ page 60)

Petitioner respectfully request review on the Court of Appeals error in
its Opinion stating that the sale of the family home is "res judicata."
(Opinion @ page 60)

## IX.   CONCLUSION

For the reasons stated above, Petitioner respectfully urges this Court grant review of Petitioners issues before this Court on first impression and reverse the Court of Appeal's decision holding that: (1) Petitioner was denied due process and equal protection of the law when the trial court failed to hold the mandatory hearing to make the required findings for Petitioner's request for need based attorney fees made pursuant to Family Code Sec. 2030 *et seq.*[1] and remand this case back to hold a hearing on Petitioner's need based attorney fee request; and (2) vacate the order denying the motion to vacate the stipulated judgment so that a new hearing can take place after Petitioner's hearing on need based attorney fees; and (3) reverse the court of appeals statement that the sale of the family home is res judicata until the fraud claims have been adjudicated pursuant to Family Law Code 2122(a) that are pending in civil court or consolidate the two pending actions.

Respectfully submitted,

Dated: February 14, 2020           By: _____

Alicia M. Richards

---

Note: The motion to vacate and request for need based attorney's fees pursuant to Family Law Code 2030 et seq. was made on September 13, 2017, before any formal judgment was rendered on January 28, 2018, violating judicial council rule 5.427 which states "The court must rule on any such motion within fifteen days and before any entry of judgment." See Appellant's Opening Brief at page 60 cf. Family Law Code Sec. 7065. Therefore, that judgment made on January 28, 2018 before the findings were made pursuant to Family Code Sec. 2030, *et seq.* is a nullity.

43

## X.   VERIFICATION

State of California, County of Orange County: I, the undersigned, being sworn, say: I am the Respondent in the Dissolution of Marriage entitled *Richards* v. *Richards,* Case No. 15D009634, Court of Appeals Case No. G055927 and am Petitioner in this action.

I have read the foregoing Petition for Review and Request for Temporary Stay of Proceedings and know the contents thereof. All facts alleged in the petition are true of my own personal knowledge.

Petitioner has filed Exhibits with this Petition, which includes the Court of Appeal's Order denying Petitioner's Petition for Rehearing dated Jan. 24, 2020, and the Fourth Appellate Court, Division Three Opinion denying Petitioner's motion to reverse the Order denying the her motion to vacate the stipulated Judgment entered into on January 26, 2018, are true and correct copies of original documents filed with the Court of Appeals, Fourth Appellate District, Division Three.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: February 14, 2020          By: _____
                                          Alicia M. Richards

44

## CERTIFICATE OF COMPLIANCE

I, Alicia Marie Richards, hereby declare:

In preparing this document using Microsoft Word 2007 program in my

computer, and in reliance on the word count function thereof, I hereby

certify that this Petition, including the cover, tables, and certificates, but not

including proof of service or exhibits are $5,777 words.

Dated: February 14, 2020        By: _____

                                     Alicia M. Richards

# EXHIBIT A

Filed 1/9/20  Marriage of Richards CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FOURTH APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| In re Marriage of ALICIA MARIE and RYAL W. RICHARDS. | |
| ALICIA MARIE RICHARDS, | G055927 |
| Appellant, | (Super. Ct. No. 15D009634) |
| v. | O P I N I O N |
| RYAL W. RICHARDS, | |
| Respondent. | |

Appeal from a postjudgment order of the Superior Court of Orange County, Linda Lancet Miller, Judge.  Affirmed.

Alicia Marie Richards, in pro. per., for Appellant.

Law Offices of Kevin E. Robinson and Kevin E. Robinson for Respondent.

47

In this marital dissolution action, Alicia Marie Richards (Wife) sought to set aside a stipulated judgment based on allegations of fraud and duress. The principle asset of the marriage was the family's Newport Beach residence, and Ryal W. Richards (Husband) agreed to give Wife three weeks to buy out his interest. When Wife was unable to make the pre-agreed upon payment, Husband listed the property for sale as required by the stipulated judgment. All did not proceed as planned. Wife initiated numerous legal proceedings to stop the sale.[1]

This appeal (the first of seven) concerns only the trial court's decision to deny Wife's motion to set aside the judgment pursuant to Family Code section 2122.[2] We also consider Husband's motion to dismiss the appeal on the grounds Wife accepted the benefits of the judgment, and therefore, waived the right to appeal. We conclude the appeal and the motion to dismiss lack merit. We affirm the postjudgment order.

FACTS

I. *Background Information*

Husband and Wife married in 1994 and they still dispute their official date of separation. In 2016, they were each represented by counsel when Husband filed the petition for dissolution and Wife filed a response. During a custody dispute early in the proceedings, Husband stated he could not afford the cost of a child custody evaluation

---

[1]     We denied Wife's request to file an oversized opening brief with 20,331 words. She filed an opening brief containing 13,995 words, just slightly below the maximum allowed. It appears one reason Wife was able to comply with the word count rule was because she abbreviated numerous words. For example, family law court became FLC. Minute order was shortened to MO. The excessive use of abbreviations significantly reduced the readability of the argument. We caution Wife to minimize abbreviations and consider using a simplified name or nickname to gain clarity. For example, the motion to set aside the stipulated judgments could be shortened to "Motion" rather than MTSA.

[2]     All further statutory references are to the Family Code, unless otherwise indicated.

2

48

because Wife refused to work and he was struggling financially to pay for two
households and four children (one in college and three minors).  In March 2016, Husband
sought physical custody of the children and asked the court to quickly schedule a trial on
the issue of selling the residence "as it will help facilitate an early resolution of the
divorce."

Approximately six months later, Husband filed a request for a hearing on
selling the family residence immediately, distributing a portion of money to the parties,
and holding the remainder in trust.  He claimed the cost of maintaining the house and a
separate residence was beyond his financial means.  He asserted Wife refused to work.
He estimated the home's equity was approximately $800,000, and because neither he, nor
Wife, could afford to buy out the other, "the only real solution is to list and sell the
house."  Husband filed an ex parte application to shorten time for the hearing.

In a supporting declaration, Husband explained he was in "dire financial
straights" and he was not earning enough commissions in his sales job.  He was late
paying the rent for his apartment and he suspected he would be asked to leave that
residence.  He was also in default on the first and second mortgages on the family
residence.  The banks sent him notices of default.  Husband stated he borrowed $50,000
from his employer, who gave him an advance on his pay.

Husband noted the parties were disputing custody and had "postponed"
making a decision on selling the house.  Husband believed the home was worth over
$1 million, but was encumbered by approximately $300,000 in loans.  He was uncertain
whether a lender would agree to let him refinance the home, and he claimed Wife did not
make enough money with her eBay business to qualify for a loan.

In October 2016, Wife filed a memorandum asking the court to postpone
ruling on whether or not to sell the house.  In her declaration, Wife noted the court
ordered Husband to pay the two mortgages as part of its May 12, 2016, spousal support
order.  She acknowledged receiving a notice of default from First Financial Credit Union

(FFCU) holding the first mortgage on the property. She was aware Husband had not made payments to Schools First Credit Union (SFCU), the bank holding a second mortgage.

Wife declared she would like to purchase the family residence because she had lived in the home for 22 years and the children grew up there. She believed it was not in the family's best interests to relocate and change schools. Wife believed she could arrange to purchase the home if given additional time. She added there was no evidence to support Husband's claims to be financially destitute or that Wife refused to work. Wife asserted she "address[ed]" the default situation by borrowing money and paying FFCU, to cure the default on the first mortgage. She also made a partial payment to the SFCU to stop it from filing a notice of default. The court set the matter for a trial on March 2, 2017.

In February 2017, Wife filed an order to show cause (OSC) regarding contempt. She asserted Husband failed to make several payments ordered by the court in May 2016. She attached an "affidavit of facts" showing Husband failed to make the following payments: (1) two $1,692 mortgage payments to FFCU; (2) two $1,991 mortgage payments to FFCU; (3) seven $912.24 mortgage payments to SFCU; (4) $159.12 payment owed to DirectTV; (5) five different payments to "ATT Uverse;" and (6) ten $147 payments to Verizon.

To prepare for the hearing, Wife's counsel deposed Husband and on March 2, 2017, she lodged a transcript with the court. She also filed a trial brief listing the prior court orders in the case. The first order, dated February 11, 2016, gave the parties joint legal custody of the three minor children and delineated a visitation schedule. The second order, dated May 12, 2016, based on the parties' stipulation, provided Husband would pay $800 per month in spousal support, the first and second mortgages, and various household bills (electric, water, gas, cable, internet, telephone, etc.).

In her brief, Wife sought joint legal and physical custody, child support, and spousal support. She stated the family residence appraised for $1,250,000, but had only approximately $993,000 in equity due to the two mortgages. Wife wanted to buy out Husband's equity share with money from her father's trust fund. She added the family's debt of $72,779 must be divided.

In addition, Wife asserted Husband owed over $44,000 in arrears for spousal support and household expenses. Due to a disparity in income (Wife earning $1,000 per month, and Husband earning $10,000 per month), Wife requested Husband pay attorney fees of approximately $75,000. She noted her prior attorney and current counsel both had liens attached to the residence.

## II. *The March 2, 2017, Stipulation*

The parties appeared with counsel for the hearing on March 2, 2017. The court met with the parties in chambers and then trailed the matter to permit the attorneys to meet and confer with their clients. The parties entered into a handwritten stipulation and order for judgment. The first two pages concerned custody and the couple's timeshare agreement regarding the minor children. The third page stated the parties intended to subpoena the trustee controlling the trust funds Wife wished to use to buy out Husband's share of the family residence. The parties stipulated the trustee would be asked to discuss the amount of the distribution and when it could be made available to Wife. The stipulation added that if Wife could buy out Husband, she would also pay the first and second mortgage or remove Husband's name from the loans.

The last two pages of the stipulation discussed that the house would be sold if the trustee indicated there was insufficient funds to buy out Husband. The parties agreed to list the house by June 1, 2017, "to take advantage of the summer market." If the trustee stated there was sufficient money for the buy out, "the court shall determine the details of the process." They agreed to attend a status conference in March 2017, to

51

resolve the parties' claims for reimbursements.  Finally, the parties accepted the plan of
using mediation to arrange a holiday schedule with the children.

III.  *The June 16, 2017, Stipulation for Judgment*

Represented by counsel, the parties appeared for trial and participated in a
chambers conference.  On the record, Husband recited the terms of a "global stipulation."
The court declared a recess to permit the parties to memorialize in writing their
stipulation.  When they returned, the parties were sworn to testify and voir dired by their
respective counsel about the stipulation.

Husband's counsel asked several questions about the status of the marriage
and then asked if Husband recalled reading and signing every page of the 11-page
document.  He summarized the document as follows: "There's an [11]-page document
that we have laborious[ly] gone through for the last four-and-a-half hours trying to deal
with the house, credits, reimbursements, watts charges, 2640, tweaked the custody and
visitation a little bit, did child support, spousal support, got rid of the contempt action
pending, got rid of the department of child support services case and came to a resolution
of that [Wife] either buys you out of the house for $450,000 or its sold forthwith."
Husband stated he understood each page and wanted the court to adopt the document as
the final judgment of dissolution.

Wife's counsel asked if Wife had read the 11-page proposed judgment
"page by page, line by line, and with the assistance of counsel understand and agree to all
the terms and conditions that are set forth therein."  Wife replied, "Yes," and gave the
same response when counsel asked if she wanted the court to enter the document as the
final judgment.

The court asked both parties if they understood "it is a global settlement[]
[t]hat means you each made compromises."  Wife replied, "Yes."

The court made the following observation: "You could come out better.
You could come out worse after trial.  You could come out better, worse, or the same

6

after you went to a special master on credits and reimbursements. You could come out better or worse with respect to spousal support and attorney fee orders but you decided to call it a global compromise. That means without an actual balance that we absolutely know, which is my job . . . , that each side gets basically the same amount on each side of the balance sheet but you've globally comprised it. [¶] Do you understand that[?]" Each party separately stated on the record, "Yes."

The court's minute order stated it entered the judgment of dissolution and the marriage would terminate "upon the filing of a formal judgment." The court accepted, signed, and filed the parties' hand written stipulation. It incorporated the stipulation by reference into the minute order. The court ordered Husband to prepare a final order.

The first page of the global stipulation outlined the parties' agreement regarding the family residence. Wife had three weeks (from the date of the order) to refinance or pay the following amounts: (1) $450,000 to Husband on or before July 7, 2017; (2) the first mortgage; and (3) the second mortgage. The stipulation clarified that if Wife did not refinance or pay the above sums by July 7th "the house shall be immediately listed for sale." In addition the stipulation specified, "The parties are ordered to sign the exclusive listing agreement" by July 8, 2017, with one of three pre-selected real estate agents listed in the judgment. Finally, the order stated that if either party failed to sign the listing agreement, the court clerk would be "ordered to sign with 24 hour notice." The parties agreed to cooperate by signing all documents necessary for sale of the residence. The order stated, "Time is of the essence. There shall be no delay in selling said residence." (Capitalization omitted.) The only exception was if Husband failed to sign any documents required by Wife to purchase or refinance the property. In such a case, the July 7th deadline would be extended until Husband signed the required documents.

7

53

The rest of the stipulation related to other issues.  For example, the parties were ordered to bear their own attorney fees and costs.  The parties waived their claims to credits and reimbursements.  They agreed to divide community debt equally.  The stipulation contained a detailed visitation schedule.  The stipulation contained a *Gavron* warning[3] and child support orders.

IV.  *Motion to Set Aside the Stipulated Judgment*

On September 13, 2017, Wife filed a motion to vacate or set aside the stipulated judgment.  Wife specified her motion to set aside the June 16, 2017, judgment was based on section 2122 [procedure to set aside marital dissolution judgments].  She claimed the stipulation was the result of "[f]raud and [d]uress."  In her supporting declaration, Wife maintained she had only agreed on issues regarding the family residence, child support, spousal support, and visitation.  She asserted, "I did not know that this was intended to be a complete and final decision as to our entire divorce which included issues that were not discussed [in] the settlement agreement."  She did not specify what issues were included in the judgment but were not discussed.

Wife next explained the reasons why she was unable to obtain a loan to buy out Husband.  She stated Husband's failure to make mortgage payments had a negative effect on her credit.  She was offered a 10 percent loan, but she felt it was "too risky."  Wife explained this was the reason she initially agreed to put the house on the market and sign the listing agreement, but now she wanted to keep the house.

Wife also discussed an oral agreement she made with Husband in August 2017.  Wife explained that her father disclaimed his inheritance and agreed to give her the money to save the family home.  She said Husband agreed to remove the house from the market in exchange for $50,000 ("for waiting until the [t]rust money went through"), $400,000 of trust money, and an additional $100,000 when Wife was able to refinance

---

[3]        *In re Marriage of Gavron* (1988) 203 Cal.App.3d 705 (*Gavron*).

8

54

the property.  Wife claimed she also asked Husband to agree to complete "a loan modification" to "catch up" on the loan payments.  Wife declared Husband agreed to these terms and he was breaching the contract and defrauding the court by filing a proposed judgment to sell the house.

Wife asserted Husband's counsel threatened her.  She claimed to have told Husband's counsel she did not agree to items in the proposed judgment and she planned to file a motion to set it aside on the grounds she "was coerced into signing the stipulation judgment by coercion and fraud."  Wife stated Husband's counsel filed the request for entry of judgment knowing she did not agree with it and planned to set is aside.

Wife maintained Husband concealed his failure to pay utility bills before she signed the stipulation.  He had not paid the bills for three months despite the court's support order mandating payment.  However, she did not assert the judgment would have looked materially different if she had known about the delinquent payments, or that the judgment would have been more favorable.

With respect to the issue of duress, Wife raised the following allegation: "[Husband] has manipulated this situation to his favor so that he can walk away with all of our marital estate and leave me with nothing.  I feel that he has intentionally misled me to trust in him so that he can have it all.  I also feel that I entered into this agreement under duress because I was not given adequate time to review all the debts, accounts, and consult an attorney to ensure the agreement represented my best interests.  My prior attorney who I fired shortly thereafter kept telling me to sign the agreement so that he would not be ordered to accept payments for his fees.  I told him that it wasn't fair that I had to pay all my attorney[] fees when [Husband] committed fraud by litigating a fraudulent third party claim with his mother against me.  I was coerced into signing the agreement."

Wife stated she signed the stipulated judgment "through duress and pressure" because she badly wanted "to save my house for our children and the pressure

9

55

of [Husband] and his attorney to put the house on the market." Wife asserted she believed she could pay off Husband without the help of her trust estate. She explained, "But because [Husband] failed to make the court ordered mortgage payments and support payments, trying to starve me and our 11-year old daughter out of the house, I signed the agreement."

She listed several other instances of perceived misconduct. For example, she noted Husband filed the final judgment although he knew Wife had fired her attorney. She believed he should have waited for her to find a new attorney. She claimed Husband failed to provide her with a list of debts and concealed his failure to pay household bills. She was unhappy the stipulated judgment contained information not discussed, such as the date of separation and a "Galvin Warning."[4] Wife asked the court to set aside the stipulation and set the matter for trial.

V. *Amended Declaration for Motion to Set Aside the Stipulated Judgment*

Three months later, Wife filed an amended declaration identifying the portions of the judgment she wished the court to set aside. Wife asserted she was seeking to set aside portions of both the May 2, 2017, stipulated order, and the June 16, 2017, stipulated judgment because "they were based on fraud, concealment, duress, mistake, and failure to comply with disclosure requirements and as a result created inequity." Essentially, Wife sought a redo of all the past support, child custody, and visitation orders. With respect to the family residence, Wife asserted there was a dispute as to how

---

[4]        We assume Wife is referring to a *Gavron* warning. (*Gavron, supra,* 203 Cal.App.3d 705.) The stipulated judgment contained the following advisement: "The [c]ourt hereby issues a *Gavron* Warning to [Wife]. [S]ection 4320 states that the goal of the State of California is that both parties shall become self-supporting within a reasonable time after a dissolution of marriage. [Wife] shall make reasonable efforts to obtain employment commensurate with her abilities to contribute toward her own support." A court has discretion to dispense with the warning if it determines the supported spouse in a lengthy marriage cannot reasonably be expected to earn enough money to become self-sufficient.

10

56

much equity she was entitled to receive. She discussed several instances of Husband's domestic violence, her own attorney's legal malpractice, her attorney's violations of the "professional code of ethics," and the reasons why she was unable to borrow money to buy out Husband and keep the house. In addition, Wife alleged Husband purposely put the house into foreclosure status to take advantage of her during the dissolution lawsuit, causing her "considerable duress and pressure." She claimed another part of Husband's "diabolical plan" was to ruin her eBay business. Wife also sought to set aside the provisions waving credits, reimbursements, and attorney fees. She asserted Husband should pay those fees.

On the issue of duress, Wife maintained she would not have signed the stipulation but for Husband's fraudulent actions of putting the property "into foreclosure status." She explained the threat of foreclosure "instilled fear and distress in me which caused me to sign the stipulated judgment." Wife argued the combination of Husband's refusal to pay support, his creation of the foreclosure threat, and schemes with his mother, created "steady pressure to the point of undue influence which exploited me to the point of overwhelming fear and duress which caused me to mistakenly sign the stipulated judgment."

Finally, Wife asserted Husband was a felon who had committed fraud in the past. She believed Husband concealed he had a second job and he was hiding money in his mother's bank account. Wife stated she intended to sue Husband for "torts in civil court by jury trial" and the family law court must wait until civil litigation was complete. She did not submit any evidence or discuss legal authority supporting this allegation.

Wife also submitted a memorandum of points and authorities discussing section 2122, and introducing for the first time additional grounds to set aside the judgment, i.e., Code of Civil Procedure section 473.

57

VI. *Second Amended Declaration and Third Supplemental Response*

On December 13, 2017, just a few days before the hearing scheduled for December 20, Wife filed a "supplemental declaration." Wife requested the court treat the declaration as evidence, however, the document was not signed under penalty of perjury. In this document, Wife reiterated the arguments previously raised. She added details relating to domestic violence, Husband's efforts to destroy her eBay business, and Husband's lack of parenting skills.

After the court continued the hearing to January 19, 2018, Wife filed a third supplemental response on January 16, 2018. She raised arguments pursuant to sections 2120, 2121, and 2122 and Code of Civil Procedure section 473. She repeated the same factual allegations regarding fraud and duress. She added arguments regarding Husband's failure to provide discovery and properly disclose his assets and liabilities as required by section 2107 and 2122. She alleged Husband breached his fiduciary duties and she intended to sue him. She asked the court to defer selling the family residence until the tort action was completely litigated and damages were "secured against" husband's equity in the family home. Wife also included a discussion of the children's best interests, arguing it would be unjust to enforce the stipulation.

VII. *The Hearing & Ruling*

The hearing was continued to the end of January 2018. The court indicated it read Wife's multiple filings, despite the fact some exceeded the page limit rules. The court told Wife one of her "declarations" was not submitted under penalty of perjury, and therefore, was considered argument. The court reminded Wife the judgment gave her additional time to purchase the family home, and if she was unable to come up with the money, the property would be sold. The court noted Wife's failure to undergo due diligence to determine if she would qualify for a loan was not Husband's fault. The court referred to evidence showing Wife was aware Husband was not making mortgage payments. It explained deferred home sale cases were rare and required extreme

12

circumstances, such as severely disabled child who must stay in the house. It rejected Wife's request to defer the home sale until after she litigated her civil claims against Husband, especially since Wife admitted she had not filed the lawsuit yet.

Turning to the merits of the motion, the court asked if there was any other evidence Wife wanted to submit. The court indicated Wife had not yet established the alleged misconduct (fraud/duress) or a mistake materially affected the outcome as required by section 2122. The court explained Wife was extensively voir dired about the stipulated judgment, and Wife stated on the record that she understood the agreement and the consequences. "People compromise all the time. And just because you might later find out that it might have been inequitable is not in and of itself a ground to set it aside." The court asked Wife if she received her trust money. Wife replied it totaled $216,000.

After considering Wife's oral argument, the court denied the motion to set aside the stipulated judgment on several grounds. First, the court determined the motion was not properly served, but because Husband responded, that issue was moot.

Second, the court determined Wife's allegation of mistake under Code of Civil Procedure section 473 was inadequate. "[T]hat you knew that the mortgage payments were not paid and the other bills were not paid and at that you chose to waive all of those defects, waiving and giving up credits and reimbursements[,] and any reasonable person should have checked their ability to refinance[,] and the effect of any lack of payments would have on their inability to refinance. In addition, the whole argument here was you were getting money from your trust and therefore you would have that ability to purchase in any event."

Third, the court determined Wife's claim of duress was not supported by any evidence. "Your papers are vague about any acts caused by [Husband] that caused your free agency to be destroyed." The court acknowledged the allegations in the January 16, 2018, document were more detailed, but the pleading was not a declaration,

and therefore, inadmissible evidence. It noted Wife's complaints about her own attorney cannot be attributed to Husband.

The court asked Wife about the material benefit of keeping the house. It noted Wife simply stated she did not want it to be sold. The court determined this reason did not establish a material benefit. "[T]here's no showing in any of your paper[s] that if we did anything different that you would get all that money from the house and not have to pay him anything."

The court found meritless Wife's claim to be "caught off[-]guard" and unaware the parties "were negotiating all matters." It reasoned the matter was set for trial and everyone was prepared for the proceedings before negotiations began. It noted the matter was continued to permit Wife to "get more information from the trust and to try to figure out if it was possible" to buy out Husband. The court ruled it was disingenuous for Wife to assert she did not intend the stipulated judgment to be a final decision as to the entire divorce. It added there was no evidence to support the claim of over $60,000 in support arrearages.

The court told Wife that if she determined spousal support was insufficient, or if there was a need to change custody/visitation, she may file a request to modify these orders. It ruled the need for modification was not a reason to set aside portions of the judgment. "The law does not allow the court to set aside a judgment just because somebody is unhappy" or now feels "something is inequitable." It reasoned Wife's unilateral mistake about how the delinquent mortgage payments would affect her credit cannot serve as grounds to set aside the judgment. It explained there was nothing raised in the various pleadings that would lead the court to conclude any portion of the stipulated judgment materially affected the outcome. Wife's possession of the home or receipt of one-half of the net sales proceeds of the home "does not equate to a material benefit or a loss." The court's minute order indicated that after denying Wife's motion to set aside the stipulated judgment, the court asked Husband to prepare a final judgment.

DISCUSSION

Unlike most civil judgments that may be set aside only within six months of entry and on the grounds specified in Code of Civil Procedure section 473, marital dissolution judgments may be set aside under sections 2121, 2122, and 2123 for a longer period of time and on a broader array of grounds. (*Rubenstein v. Rubenstein* (2000) 81 Cal.App.4th 1131, 1143-1146.) Relevant to this case, section 2122 empowers a court to set aside a marital dissolution judgment if the moving party proves "[a]ctual fraud," a "mistake of law or mistake of fact," or duress. (§ 2122, subds. (a), (c), (e).) The court has authority to "relieve a spouse from a judgment" or any parts of the judgment "after the six-month time limit of [Code of Civil Procedure] section 473" as long as the court finds "that the facts alleged as the grounds for relief materially affected the original outcome and that the moving party would materially benefit from the granting of the relief." (§ 2121, subd. (b).) (See *In re Marriage of Kieturakis* (2006) 138 Cal.App.4th 56, 89-90 [moving party has burden of proof].)

Code of Civil Procedure section 473 and the Family Code statutory scheme (sections 2121 through 2123) "coexist, operating as alternative bases for relief, depending on when the application is filed." (*In re Marriage of Heggie* (2002) 99 Cal.App.4th 28, 32 (*Heggie*).) "There is one interesting interaction between the two statutory schemes: [S]ection 2123 necessarily superimposes a per se rule on the trial court's discretion under [Code of Civil Procedure] section 473. Section 2123 is plain that where the only reason to set aside a judgment is that it was 'inequitable when made,' the trial court is affirmatively commanded *not* to set the judgment aside under 'any' law. Section 2123 reads: '*Notwithstanding* any other provision of this chapter, or *any other law*, a judgment may not be set aside simply because the court finds that it was inequitable when made, nor simply because subsequent circumstances caused the division of assets or liabilities to become inequitable, or the support to become inadequate.' (Italics added.) Thus to whatever degree [Code of Civil Procedure] section 473 jurisprudence might have, prior to

15

61

the enactment of the [Family Code statutory scheme], countenanced the setting aside of a family law judgment because it was somehow 'inequitable,' that discretion has now been expressly curtailed.  [¶] Put another way, section 2123 represents a fixed legal principle that may not be substantively contravened by the trial court in considering a discretionary application for relief under section 473." (*Heggie, supra,* 99 Cal.App.4th at p. 33, fn. omitted.)  Therefore, the court lacks authority to set aside a judgment simply because there is evidence one party benefits from a windfall, or "naked lopsidedness of the deal in hindsight" suddenly is revealed.  (*Id.* at p. 36.)

In summary, the moving party has the burden of satisfying the following three factors:  (1) facts establish one of the grounds for relief listed in section 2122 (fraud, duress, mistake, perjury etc.); (2) these facts "materially affected the original outcome" (§ 2121) in some way other than being inequitable (§ 2123); and (3) "the moving party would materially benefit" from setting aside the judgment (§ 2121).

"A judgment or order of the trial court is presumed to be correct, and all intendments and presumptions are indulged to support it on matters as to which the record is silent.  [Citation.]"  (*In re Marriage of Gray* (2002) 103 Cal.App.4th 974, 977-978.)  We reverse a decision denying a motion to set aside only if there has been a clear abuse of discretion leading to an "injury sufficiently grave as to amount to a manifest miscarriage of justice.  [Citations.]"  (*In re Marriage of Rosevear* (1998) 65 Cal.App.4th 673, 682.)  Wife did not meet her burden of proof.

I. *Fraud Allegations*

The type of fraud described in section 2122, subdivision (a), includes extrinsic fraud, a traditional equitable basis for setting aside a judgment.  (*Kuehn v. Kuehn* (2000) 85 Cal.App.4th 824, 832-833 (*Kuehn*).)  "Extrinsic fraud occurs where a party is deprived of the opportunity to present her claim or defense to the court, or in some manner fraudulently prevented from fully participating in the proceeding."  (*Ibid.*)

16

62

Section 2122 also permits a judgment to be set aside due to intrinsic fraud because subdivisions (b), (e), and (f) provide perjury, mistakes of law or fact, and "failure to comply with the disclosure requirements" are additional grounds for relief. (See *Kachig v. Boothe* (1971) 22 Cal.App.3d 626, 634 ["in a litigated case the concealment or suppression of material evidence is held to constitute intrinsic fraud"]; *Kuehn, supra,* 85 Cal.App.4th at p. 833 [explaining traditional rule that distinguished extrinsic fraud from "intrinsic fraud, such as perjury, which was not a valid ground for relief"].)

Wife's discussion of fraudulent activity is lengthy. In addition to 68 pages in the opening brief, Wife created a six-page chart listing 72 different fraud allegations (in extremely small font text). Most of these allegations were asserted below in her motion, amended declarations, and supplemental responses.[5]

In a nutshell, Wife maintains she uncovered Husband's fraudulent scheme to destroy her livelihood, unfairly take away her home and assets, and leave her penniless. Wife's brief repetitively asserts Husband lied about his income, failed to disclose assets, violated court orders, and committed other misdeeds as part of a "diabolical plan" to take all the marital assets and the children.

However, the record suggests Wife was aware of most of Husband's purported scheming before she signed the global settlement, which became the stipulated judgment. In February 2017, one month before signing the stipulation, and four months before executing the global settlement, Wife filed an OSC regarding contempt based on allegations Husband failed to pay bills in violation of a prior support order. It cannot be said Wife was completely unaware of Husband's alleged misconduct. Wife's admission

---

[5]      To the extent Wife raised new issues of fraudulent activity in her appellate briefing, we cannot consider those allegations. Our review of the trial court's ruling under an abuse of discretion standard must be limited to the evidence considered by the trial court in Wife's motions and supplemental responses. This court cannot rewrite the motion to include new facts raised for the first time on appeal.

63

she borrowed money to pay the mortgages confirms she suspected Husband was letting the property fall into a foreclosure status to facilitate a quicker divorce.

If we assume, for the sake of argument, Wife established external or internal fraud (or even a mistake in fact), the trial court nevertheless lacked authority to set aside the judgment. As discussed earlier, the trial court must also determine "that the facts alleged as the grounds for relief materially affected the original outcome and that the moving party would materially benefit from the granting of the relief." (§ 2121, subd. (b), italics added.) As discussed earlier, this requirement relates to section 2123's legal principal that a trial court cannot set aside a judgment solely because it appears to be unfair or inequitable to a party, either at the time it was entered, or due to subsequent circumstances. We agree with the trial court's determination Wife failed to present evidence to establish these requirements (§§ 2121 & 2123.) It was not enough to simply establish fraudulent conduct.

With respect to the family residence, the judgment contained the outcome Wife requested in her initial declaration. She wanted to delay selling the house. The judgment provided Wife with three weeks to arrange for and find money to buy out Husband. Wife wanted to purchase the family residence for a fair price. The judgment provided favorable buy out terms where Wife was paying Husband less than his community property share.[6]

When the court asked Wife if she had additional evidence regarding how she would materially benefit from setting aside the judgment and if there were grounds for a different outcome, she replied that she and her children would benefit from keeping the house and it should not be sold. This showing was not enough. Wife needed to prove

---

[6]    Wife declared the house appraised for $1,250,000, but due to encumbrances, had approximately $993,000 in equity. Husband's half, his community property share, would be $496,500. The judgment provided Wife would pay $450,000 (a $46,500 windfall for Wife).

Husband's alleged misconduct "materially affected the original outcome" of the stipulated judgment. In other words, Wife had the burden of establishing which terms of the stipulated judgment should have been different, as well as how those changes would result in a "material benefit" to her.

We find it very telling that Wife does not discuss the judgment's favorable terms of delaying the sale for three weeks. Rather, on appeal Wife simply argues the court should have postponed the sale until after other issues in the family law case were resolved and after she litigated a separate tort action against Husband. Although she does not articulate the point well in her briefing, we can reasonably infer Wife's position is that to maintain the status quo the stipulated judgment should omit all terms regarding the sale. Essentially, it is her contention that delaying the equitable division of the asset would have been the outcome but for Husband's misconduct.

This argument overlooks how the dispute started. At the end of 2016, Husband requested a hearing on selling the family residence immediately due to financial difficulties. Wife filed a declaration stating *she wanted to purchase the home* and she desired additional time to make the arrangements. If the parties had not reached an agreement, the court would have held a hearing to consider Husband's request and Wife's "counter memorandum." There was no possibility of a court order or judgment not addressing the division of this marital asset.

Wife argues that if Husband's fraudulent scheme had worked, he would have facilitated foreclosure proceedings and then repurchased the home from the bank at a bargain price. Wife essentially thwarted this plan by negotiating with Husband and agreeing to a global settlement/stipulated judgment giving her three weeks to purchase the property. The judgment's terms regarding the three-week postponement, as well as the agreed upon terms of sale in the event she was unable to purchase the property, both avoided foreclosure proceedings to Wife's benefit. Including terms that maintained the

65

status quo or stopped the home's sale would likely have resulted in the two banks initiating foreclosure proceedings, which would not be to Wife's benefit.

Accordingly, due to the procedural history of this case, Wife could not have hoped for better terms regarding division of the family residence. She does not explain how an order maintaining the status quo would have been possible, or for that matter, been realistically in her favor.

Wife does not dispute the home was a community property asset subject to an equitable division. We can reasonably infer from the tone of her argument that Wife believes Husband's alleged misconduct during the marriage and after their separation warrants maintaining the status quo as a type of punishment. However, "Fault is simply not a relevant consideration in the legal process by which a marriage is dissolved. Recovery in no-fault dissolution proceedings 'is basically limited to half the community property and appropriate support and attorney fee orders—no hefty premiums for emotional angst.' [Citation.]" (*Diosdado v. Diosdado* (2002) 97 Cal.App.4th 470, 474.)

We also reject Wife's assertion the trial court was required to postpone division of community assets until she completed her tort action against Husband. She provides no legal authority to support this contention. The argument was based on the faulty assumption Wife would prevail in the civil action, and the award could offset any money owed to Husband. However, a family law court need not stay the dissolution action and order Husband to continue paying for two residences while Wife's civil action percolates in a different courtroom.

II. *Duress Allegations*

We appreciate Wife experienced significant pressure and intense emotional duress when she was faced with the imminent threat of foreclosure of her beloved home. She explains how Husband's default on the loans, past incidents of domestic violence, the lack of financial options, poor credit, and bad advice from her attorney were all factors creating an extremely stressful situation and that led to her mistake of signing the global

settlement.  While we are sympathetic to these alleged circumstances, the type of duress
she describes does not satisfy the legal definition of *contractual* duress, required to set
aside the stipulated judgment.

Section 2122, subdivision (c), does not define the term duress.  Generally,
"""[d]uress . . . includes whatever destroys one's free agency and constrains [him or her]
to do what is against [his or her] will, and may be exercised by threats, importunity or
any species of mental coercion . . . .'" [Citation.]  It is shown where a party 'intentionally
used threats or pressure to induce action or nonaction to the other party's detriment. . . .
The coercion must induce the assent of the coerced party, who has no reasonable
alternative to succumbing.  [Citation.]' [Citation.]"  (*In re Marriage of Balcof* (2006)
141 Cal.App.4th 1509, 1523 (*Balcof*).)

Although duress may be a tort or a crime, most authorities view the true test
as contractual.  (See *In re Marriage of Gonzalez* (1976) 57 Cal.App.3d 736, 743-744
(*Gonzalez*).)  """By many if not most of the modern authorities, however, the true
doctrine of duress is held to be that a contract . . . obtained by so oppressing a person by
threats regarding the safety or liberty of himself, or of his property, or of a member of his
family, as to deprive him of the free exercise of his will and prevent the meeting of minds
necessary to a valid contract, may be avoided on the ground of duress. . . .'""  (*Ibid.*)  To
justify setting aside a stipulated judgment, the party seeking relief must prove the duress
so exercised control over her, that her will was absolutely subservient to the will of the
offending party.  (*Id.* at p. 744.)  This test does not turn on the nature of the threats, but
on the state of mind induced in the victim.  (*Ibid.*)  The court must take into consideration
the attributes or characteristics of the party claiming duress, including her ability to resist.
(*Ibid.*)

Accordingly, to prove contractual duress, Wife faced a very high hurdle of
proof.  "The coercion must induce the assent of the coerced party, who has no reasonable
alternative to succumbing.  [Citation.]"  (*In re Marriage of Baltins* (1989) 12 Cal.App.3d

67

66, 84 (*Baltins*).)  It is not enough to demonstrate Husband intentionally threatened her by his actions or words to induce her to sign the agreement, and it is not enough to show this coercion induced fear.  Wife must show the duress utterly destroyed her free will.  "It is well settled that a contract . . . may be set aside for duress only if it was ""'obtained by so oppressing a person by threats regarding the safety or liberty of himself, or of his property . . . as to deprive him of the free exercise of his will.'""  [Citations.]"  (*In re Marriage of Broderick* (1989) 209 Cal.App.3d 489, 499 (*Broderick*).)  Consequently, if the coerced party had mixed motives for agreeing to the contract, no duress will be found. (*Ibid.*)

For example, in the *Broderick* case, the wife, who had been the victim of past threats and domestic violence, conceded that she assigned a quitclaim deed to her husband because she wanted to leave him and needed the money.  (*Broderick, supra,* 209 Cal.App.3d at p. 499.)  She also agreed that when she signed the deed, her husband was not making threats or acting violent.  (*Ibid.*)  The court determined Wife had not proven duress.

Similarly, if time has passed between the alleged coercion and execution of a stipulated judgment, no duress will be found.  In *In re Marriage of Rosevear* (1998) 65 Cal.App.4th 673, 685-686 (*Rosevear*), the court found no cognizable "duress" where the record showed that a complaining spouse's consent to a stipulated judgment was "freely, knowingly and voluntarily given," where she had three months to reflect on the agreement and obtain independent advice before signing the stipulated judgment, and had been thoroughly questioned by a settlement judge to ensure that she understood the agreement.

The passage of time rebuts the inference a party was deprived of the exercise of free agency, or lacked any reasonable alternative but to agree to what she later claimed was a coerced agreement.  (See *Rosevear, supra,* 65 Cal.App.4th at p. 686 [fact that alleged violence took place months before settlement agreement was signed rebutted

22

51

68

inference of duress].)  Thus, if the coerced party had time to reflect on the terms of the

stipulation and/or obtain legal advice, but nevertheless signs an agreement she later

regrets, she is not a victim of duress.  Rather, she is suffering from "'buyer's remorse.'"

(*Rosevear, supra*, 65 Cal.App.4th at p. 686.)

   In this case, it cannot be said the court abused its discretion in determining

wife failed to present adequate evidence of contractual duress.  Wife's description of the

history of domestic violence was remote and Wife did not assert Husband threatened or

pressured her when she signed the stipulation or when she executed the global settlement

agreement several months later.  At the time of execution, Wife was represented by

counsel and was given time to investigate the availability of her father's trust fund

money, obtain advice from others, and organize financing to buy out Husband's part of

the home.  Wife, with the assistance of counsel, negotiated a deal with Husband to buy

out his share for the compromised sum of $450,000.  As mentioned earlier, this sum

appears to be less than Husband's anticipated community property share (half of

$1,250,000 minus the outstanding mortgages).

   Thus, Wife convinced Husband to postpone the sale and accept a lower pay

out.  While Husband created pressure to take immediate action to avoid foreclosure, the

stressful situation did not preclude Wife from considering her options for two months or

prevent her from negotiating favorable terms regarding the house.  This was an

insufficient showing Husband's conduct deprived Wife of the exercise of her free will or

that she lacked any "reasonable alternative to succumbing."  (*Baltins, supra*,

212 Cal.App.3d at p. 84; see also *Balcof, supra*, 141 Cal.App.4th at p. 1523.)

   In *Rosevear*, a couple engaged in long-term negotiations throughout which

the wife was intermittently represented by a series of attorneys.  (*Rosevear, supra*,

65 Cal.App.4th at pp. 676-679.)  The parties reached an oral agreement after a day-long

settlement conference before a panel of three temporary judges.  (*Id.* at p. 679.)  That

agreement was read into the record and, three months later, the wife executed the

stipulated judgment. (*Id.* at pp. 679-680.) Six months later, represented by new counsel, the wife moved to set aside the stipulated judgment and settlement agreement claiming she had executed it under duress and due to mistake. (*Id.* at pp. 680-682.) The appellate court affirmed the trial court's ruling denying wife's motion to vacate. (*Id.* at pp. 686-687.) "The transcript of [the settlement judge's] voir dire at the settlement conference contains no hint of coercion or duress. To the contrary, [the judge] took extraordinary pains to ensure that [the wife's] agreement was freely, knowingly and voluntarily given. . . . [The wife] was clearly and expressly given sufficient opportunity to complain or object. If she had truly felt coerced or pressured to agree at the time of the settlement conference, surely some indication would appear in the reporter's transcript." (*Id.* at pp. 685-686.) The voir dire coupled with the fact that the wife waited three months after the settlement conference to execute the stipulated agreement "provide[d] strong evidence in support of the trial court's conclusion that [she] failed to establish . . . duress." (*Id.* at p. 686.) The court observed that when a contracting party has had ample time to reflect and obtain advice, this is likely to be evidence of garden variety "'buyer's remorse'" not duress. (*Id.* at p. 686.)

Similarly, in the case before us, Wife's voir dire does not suggest she executed the stipulation or the global settlement under duress. In addition to answering questions posed by her attorney about the agreement, the court sought clarification about whether Wife understood the global settlement was a significant compromise and she "could come out better" or worse if she went to trial. The court mentioned the settlement covered many topics the court usually evaluates and balances equally between the parties, including spousal support, credits, reimbursement, and attorney fees. The court asked each party if they understood the court did not balance these items because "you've globally compromised it." Wife responded, "Yes." When the court asked if either party had any questions, Wife simply asked, "Are we divorced? Are we free?" She also asked the court how long it would take for Husband's counsel to prepare the final judgment and

24

wanted the court to impose a deadline. Such demands are not made by a person completely deprived of free will.

Finally, we conclude Wife failed to demonstrate Husband's purported threats or coercion destroyed her free will because she concedes other factors influenced her decision to sign the agreement. Specifically, Wife admits she signed the agreement because her attorney gave her bad advice. Mixed motives are insufficient to establish duress. (*Broderick, supra*, 209 Cal.App.3d at p. 499 [contracting party does not act under duress where he or she admittedly has multiple motives for entering into the agreement].)

III. *Alleged Legal Malpractice*

Wife's initial declaration asserted there was inadequate time to consult with an attorney and, at the same time, she met with an attorney who pressured her to sign the stipulation and global settlement. She suggested the court was required to set aside the judgment because her attorney, who negotiated the stipulated judgment, was negligent. We disagree. As explained in *Rosevear*, attorney negligence is not a distinct ground for setting aside a marital dissolution judgment: "[E]ven though attorney negligence will not be imputed to a client to bar an order setting aside a judgment, such an order may still only be granted if it is based on one of the five exclusive grounds specifically set forth in section 2122." (*Rosevear, supra,* 65 Cal.App.4th at p. 686.) "Attorney negligence is not itself one of these enumerated grounds for setting aside a judgment. The fact that attorney negligence is not a bar to setting aside a dissolution judgment does not transform it into a form of fraud, perjury, duress, mental incapacity, mistake, or other ground *for* setting aside a judgment." (*Ibid.*)

IV. *Alleged Court Bias*

In her briefing, Wife's mantra is that the court was obligated to address Husband's failure to comply with court orders. Wife believes an unbiased court would have imposed evidentiary sanctions after Husband refused to disclose documents, hid assets, and lied about his income. She is baffled as to why the court refused to impose

25

sanctions or hold Husband in contempt.  She speculates the court was biased against her
because it believed Husband's claim she was a hoarder with psychological problems.
While Wife acknowledges the court never made any factual findings regarding Wife's
mental state, she asserts the only possible reason the court would have ignored her
evidence of fraud and ruled against her was judicial bias against her.

      "The operation of the due process clause in the realm of judicial
impartiality . . . is primarily to protect the individual's right to a fair trial." (*People v.
Freeman* (2010) 47 Cal.4th 993, 1000 (*Freeman*).)  "The role of a reviewing court 'is not
to determine whether the trial judge's conduct left something to be desired, or even
whether some comments would have been better left unsaid.  Rather, we must determine
whether the judge's behavior was so prejudicial that it denied [the challenging party] a
fair, as opposed to a perfect, trial. [Citation.]' [Citation.]" (*People v. Harris* (2005)
37 Cal.4th 310, 347.)

      Wife forfeited any claim of judicial bias by failing to assert it below.  (See
*People v. Farley* (2009) 46 Cal.4th 1053, 1110; *People v. Samuels* (2005) 36 Cal.4th 96,
114.)  Moreover, none of Wife's bias allegations relate to statements the court made on
the record.  Rather, Wife infers bias merely from the rulings made in Husband's favor.
"'[A] trial court's numerous rulings against a party—even when erroneous—do not
establish a charge of judicial bias, especially when they are subject to review.'
[Citation.]" (*People v. Fuiava* (2012) 53 Cal.4th 622, 732.)

V.  *Other Due Process Concerns*

A.  *Request for Attorney Fees*

      Wife maintains the court ignored her request for need-based attorney fees.
Her supporting record references show her "request" was made on pages 29 and 32 of her
December 2017 "supplemental declaration" in support of her motion to set aside the
stipulated judgments of May and June 2017.  On page 32, Wife stated she "petitions the
court" for attorney fees and costs pursuant to section 2032.

72

Wife's briefing does not contain any legal analysis or legal citations to
support her claim the trial court erred in failing to rule on her request for attorney fees
that she buried deep within a supplemental declaration. (See *In re Marriage of Sharples*
(2014) 223 Cal.App.4th 160, 166 [party seeking attorney fees and costs under section
2030 must file and serve either form FL-319 or comparable declaration listing amount of
fees and costs requested, attorney billing rates, notice to party, and personal declaration
as to financial need].)

In addition to procedural and due process concerns with Wife's attorney fee
request, it appears the court could have determined Wife abandoned the issue because she
did not request a ruling during the hearing. Alternatively, the court could have
recognized its obligation to uphold the stipulated judgment's attorney fee agreement.
Because the trial court determined there were no valid grounds to set aside the stipulated
judgment, the attorney fee provision was valid. It stated, "Each party shall their own
attorney[] fees and costs and shall not be responsible for the attorney[] fees and costs of
the other party." It also contained a prevailing party attorney fee provision. In other
words, the court likely determined Wife waived her right to need-based attorney fees
under section 2032 as part of the global settlement.

In a marital settlement agreement, parties to a dissolution proceeding or to
an action relating to a dissolution judgment may contractually waive their rights to
need-based attorney fee awards under sections 2030 and 2032. (See, e.g., *In re Marriage
of Guilardi* (2011) 200 Cal.App.4th 770, 774-775.) Determining whether the parties
intended to waive their statutory rights depends on their expressed intent in the stipulated
judgment, requiring application of general rules of contract interpretation. (See generally
*In re Marriage of Iberti* (1997) 55 Cal.App.4th 1434, 1439 ["Marital settlement
agreements incorporated into a dissolution judgment are construed under the statutory
rules governing the interpretations of contracts generally"].)

27

73

Wife does not provide legal analysis or discussion regarding the issue of
her contractual waiver of need-based attorney fees. Accordingly, we deem the attorney
fee issue waived. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785
(*Badie*) ["When an appellant fails to raise a point, or asserts it but fails to support it with
reasoned argument and citations to authority, we treat the point as waived"].)

B. *No Statement of Decision*

Wife maintains the court ignored her two written requests for a statement of
decision. As noted by Husband, the court provided an oral statement of decision on
January 26, 2018, at the end of the hearing on Wife's motion to set aside the stipulated
judgment. Nothing more was required. Under section 632, the court may give an oral
statement of decision if the hearing was concluded within one day or less than eight
hours. (See *In Re Marriage of Katz* (1991) 234 Cal.App.3d 1711, 1717.)

C. *No Continuance & Husband's Invocation of Fifth Amendment Rights*

The following is a brief summary of the procedural history regarding these
two related issues. Wife's initial motion to set aside the stipulated judgment showed the
court scheduled the hearing for October 17, 2017. On that date, the court granted Wife's
request for a continuance and scheduled the hearing for December 20, 2017. In
November 2017, the court also continued Wife's OSC regarding contempt to December
20, 2017. Before the December 20 hearing date, Wife filed an amended declaration
regarding the motion to set aside the judgment.

Meanwhile, on December 12, 2017, Husband filed an objection to Wife's
request for a hearing on custody, visitation, and support. He explained Wife's OSC
regarding contempt (scheduled for December 20, 2017) was a quasi-criminal action and
Husband had a right not to incriminate himself by filing responses to Wife's request for a
hearing on custody and support. He asserted a response would require him to provide an
income and expense declaration, which would essentially waive his Fifth Amendment

right against self-incrimination.  Husband noted Wife filed a second OSC regarding
contempt, which was scheduled for January 5, 2018.

On December 13, 2017, Wife filed her third supplemental response to her
motion to set aside the judgment.  On December 18, 2017, two days before the scheduled
hearing, Wife filed a confusing document titled, "Further reply with alternative solution
re: [Husband's] objections to hearing on the requests for orders regarding custody,
support, visitation and any other proceeding other than a motion to set aside."
(Capitalization omitted.)  On appeal, she claims this document was a request for a
continuance.

The document has only 11 lines.  In the first sentence, Wife offers the court
"a clean solution to the problem presented by [Husband]."  She suggests that the court
should hear her two OSCs regarding contempt before the motion to set aside and all other
motions regarding support and attorney fees.  She explained this plan "will allow all the
motions to be heard without them being impeded by the issue of [Husband] taking the
Fifth Amendment."

Wife does not explain why the court should have construed her further
reply as a request for a continuance.  Wife's solution of having the court consider the two
OSCs before the motion to set aside the stipulated judgment did not necessarily require a
continuance.  All three motions could have been heard on the same date.

On December 20, 2017, the court continued the hearing on the motion to
set aside the judgment to January 19, 2018.  The two OSCs regarding contempt were
continued to February 20, 2018.

On January 16, 2018, two days before the scheduled hearing, Wife filed her
final supplemental response in support of the motion to set aside the judgment.  On the
scheduled hearing date, the court on its own motion continued the matter to January 26,
2018.

29

75

It appears Wife's final argument is that the court violated her right to due process by continuing the hearing date on its own motion. Wife asserts her final 27-page supplemental response, filed on January 16, 2018, informed the court she intended to call three witnesses. She asserts the court abused its discretion when it refused to grant her a continuance to present her witnesses or cross-examine Husband "who was taking the Fifth." The legal basis for this argument is unclear.

The caption of the supplemental response does not mention the need for three additional witnesses or for a hearing on a certain date. Wife does not provide a record reference to support her claim this information was contained in the 27-page supplemental response. Accordingly, we deem this issue waived. (*Badie, supra,* 67 Cal.App.4th at pp. 784-785.)

Wife asserts she objected to the continuance, however, she refers to a written objection she filed on February 7, 2018, long after the hearing on her motion to set aside the judgment. In the objection, Wife claimed she called the court clerk and said her witness was unavailable on the new hearing date (January 26, 2018). She recalled the court clerk informed her to tell the court about her witness on January 26 and ask, "if they could be heard via telephone." Wife asserted the court denied this request, which was an abuse of due process.

The reporter's transcript indicates Wife told the court "I do have a witness that can testify to the intentional putting [sic] the mortgage into foreclosure status, and he was available last week and the hearing got continued. He is available on the phone." The court stated it was unwilling to hear the witness testify on the telephone. Wife replied "or we can do a short continuance" to a date the witness was available. The court indicated this was unnecessary because Wife's primary allegation did not relate to being unaware of the foreclosure status, but rather that she did not realize the late payments would be detrimental to her credit and ability to secure a loan. Wife agreed this was her main contention. As mentioned, the court ruled Wife's fraud allegations were

76

insufficient to set aside the judgment because she also needed to establish how those facts materially affected the outcome and how she would have materially benefitted by the relief requested.

On appeal, Wife does not suggest why the court's refusal to allow additional evidence proving fraud prejudiced her case. She does not claim this witness would have contributed evidence to the determinative issue of how the outcome would have been different and materially beneficial. Moreover, based on our review of the record, it does not appear that Wife asked the court to rule on a continuance request. There is actually no order for us to review on appeal.

D. *Refusal to Bifurcate*

Wife asserts her due process rights were violated when the court refused to "grant or deny" her request to "[b]ifurcate the real property issues pending the outcome of her torts [sic] against [Husband] in Case No. 30-2018-00986705-CU-FR-CJC." She elaborates that on December 18, 2017, she requested that the court "bifurcate the family home and order a deferred sale pending the division of assets, debts, offsets for back and present support and the outcome of the lawsuit against [Husband] based on his fraudulent scheme to obtain the family home through deceit and fraud during the divorce which created an unequal division of community property[.]"

Wife's supporting record references show her request for bifurcation was not raised in a separate motion. Rather, the request was listed as the fifth item on her December 13, 2017, "supplemental declaration in response to [the] motion to set aside stipulated judgments." (Capitalization omitted.) She wrote the following: "[Wife] is asking this [c]ourt to 'bifurcate' or divide the divorce into two parts. The divorce can be made final while the issues surrounding the disputed property division and division of debts and assets can be set for trial. Bifurcation is proffered so that [Wife] can present evidence based on [Husband's] actions, as set forth in her pleadings, will prove how [he] willfully, wantonly, and maliciously created a diabolical scheme and acted on said

31

77

scheme to deprive [Wife] and her children of an equal division of the couples assets, namely the family home located [in] Newport Beach, California."

She asserts the family law court failed to exercise its discretion and rule on the merits of the bifurcation request. To support this allegation, Wife cites to pages 1457-1480 of the clerk's transcript. Within these 23 pages is the court's minute order, stating Husband must make several corrections to the proposed judgment based on its review of Wife's objections. Not surprisingly, this order, written seven days before Wife's bifurcation request, does not mention the issue of bifurcation. Wife's request was not before the court at that time. The rest of the cited pages contain the following documents: (1) Wife's reply to Husband's objections to having a hearing on orders relating to custody, support, and visitation; and (2) Wife's reply to Husband's objections to proofs of service. Neither of these documents prove the court failed to rule on the merits of Wife's bifurcation request.

We appreciate Wife orally requested bifurcation at the hearing on her motion to set aside the stipulated judgment. When the court asked her about the lawsuit, Wife admitted she had not yet filed a tort action against Husband. It is disingenuous for Wife on appeal to assert the court erred in refusing to consider a tort action filed *after* the court's ruling. The court need not consider speculative arguments.

Wife's argument lacks merit for the additional reason that her request to bifurcate family law issues was included in documents relating to her motion to set aside the stipulated judgment. The issues Wife wanted the court to bifurcate were resolved in the stipulated judgment. The court had no legal basis to bifurcate matters no longer pending.

For this same reason, we reject Wife's assertion the court abused its discretion by failing to consider her request for a deferred sale of the home. Sections 3801 and 3802 permit a court to defer the sale of a family home where certain conditions are met, relating to limited factual circumstances. However, in this case the court lacked

jurisdiction to consider this particular issue because the fate of the family home was completely resolved by the stipulated judgment. The judgment provided Wife had three weeks to buy out Husband's share of the house, or the parties must cooperate to sell the property and divide the proceeds. After the court determined there were insufficient grounds to set aside the judgment, there was no legal basis to disturb the final judgment and revisit the issue of whether the house should be sold. "A stipulated judgment is as conclusive as to the matters in issue it determines as a judgment after trial. [Citation.]" (*Sargon Enterprises, Inc. v. University of Southern California* (2013) 215 Cal.App.4th 1495, 1507.) The doctrine of res judicata bars further litigation regarding the fate of the family residence.

VI. *Disentitlement Doctrine*

      Husband asserts Wife lacked standing to appeal from a judgment because she violated the trial court's order and judgment to cooperate with efforts to sell the house. This argument is somewhat paradoxical because in our record the only evidence suggesting a party violating court orders relates to Husband. The record shows two scheduled OSCs regarding contempt relating to his alleged failure to pay court-ordered utility bills, spousal support, and child support. Husband never denied that he violated the order requiring he pay two mortgages, which put the loans in default, damaged the couple's credit rating, and created a threat of foreclosure. Disentitlement is based on an equitable rationale, and we are mindful of the maxim that one who comes to court seeking equity must come with clean hands. (See *Blain v. Doctor's Co.* (1990) 222 Cal.App.3d 1048, 1059.)

      Husband cites authority holding the following: "'An appellate court has the inherent power, under the "disentitlement doctrine," to dismiss an appeal by a party that refuses to comply with a lower court order. [Citations.] As the Supreme Court observed . . . , "A party to an action cannot, with right or reason, ask the aid and assistance of a court in hearing his demands while he stands in an attitude of contempt to legal orders

33

62

79

and processes of the courts of this state. [Citations.]" [¶] . . . [An] equitable rationale underl[ies] the doctrine. "'Dismissal is not "'a penalty imposed as a punishment for criminal contempt. It is an exercise of a state court's inherent power to use its processes to induce compliance'" with a presumptively valid order.'"" [Citation.] 'No formal judgment of contempt is required; an appellate court "may dismiss an appeal where there has been *willful disobedience or obstructive tactics.* [Citation.]" [Citation.] The doctrine "is based upon fundamental equity and is not to be frustrated by technicalities." [Citation.]' [Citation.]" (*Blumberg v. Minthorne* (2015) 233 Cal.App.4th 1384, 1390-1391 (*Blumberg*).)

Our record does not contain any evidence Wife failed to comply with a lower court order before she filed this appeal. Indeed, Husband does not suggest Wife acted inappropriately before filing this appeal. We note that she has not violated any orders issued by this court.

Husband suggests evidence of more recent incidents of misconduct in the trial court warrant her dismissal. He filed a request asking this court to take judicial notice of a court order, dated November 9, 2018, which indicates Wife violated court orders. Without having the benefit of any supporting legal authority, Husband argues Wife should be dismissed from this appeal because "[t]hroughout this entire appellate proceeding, [Wife] has been in violation" of the trial court's orders to help sell the family residence and she "instead sought unsuccessfully to postpone any such sale." This argument runs contrary to Husband's case authority and the holding of *Blumberg*. The test is whether Wife sought assistance from the appellate court while standing "in an attitude of contempt." (*Blumberg, supra,* 233 Cal.App.4th at pp. 1390-1391.) When Wife filed this appeal, there was no evidence she had willfully disobeyed trial court orders. Husband's argument lacks merit, and we deny his request for judicial notice.

VII. *Motion to Dismiss*

Husband's motion to dismiss the appeal was made on the grounds Wife cannot appeal from a judgment because she benefitted from it. In summary, Husband asserts Wife cannot try to buy the property as permitted by the judgment and then later attack the validity of that same judgment. We disagree.

As a general rule, "one who *accepts* the *benefits* of a judgment cannot thereafter attack the judgment by appeal." (*Lee v. Brown* (1976) 18 Cal.3d 110, 114 (*Lee*).) The Supreme Court has repeatedly stated the rule as follows: "'The right to accept the fruits of a judgment, and the right of appeal therefrom are not concurrent. On the contrary, they are totally inconsistent. An election to take one of these courses is, therefor, a renunciation of the other.' [Citation.]" (*Id.* at p. 114.) In other words, the acceptance of a judgment's benefits "constitutes an '. . . affirmance of the validity of the judgment against him [or her].' [Citation.]" (*Ibid.*)

"This general rule has been applied in a number of contexts. (See, e.g., *Schubert v. Reich* (1950) 36 Cal.2d 298 [appellant accepted money pursuant to an order of the court that had explicitly conditioned the granting of plaintiff's motion for a new trial on the payment to defendant of that money, which order appellant then attempted to challenge]; *Giometti v. Etienne* (1936) 5 Cal.2d 411 [appellants paid the balance due on a contract of purchase, received a conveyance of property, encumbered that property, and filed a satisfaction of judgment]; *Wilson v. Wilson* (1958) 159 Cal.App.2d 330 [appellant accepted the benefits of a divorce decree and then sought to appeal the portion of the decree imposing obligations upon him] . . . .)" (*Lee, supra,* 18 Cal.3d at pp. 114-115.) "'Although the acceptance must be clear, unmistakable, and unconditional [citation], acceptance of even a part of the benefit of a judgment or order will ordinarily preclude an appeal from the portion remaining. [Citation.]' [Citation.]" (*Satchmed Plaza Owners Assn. v. UWMC Hospital Corp.* (2008) 167 Cal.App.4th 1034, 1041-1042 (*Satchmed Plaza Owners*).)

81

"'As is so often the case, however, application of the rule has generated a number of equitable exceptions.' [Citation.] For one, 'a waiver will be implied [only] where there is *voluntary compliance* with a judgment . . . .' [Citation.] 'Thus where compliance arises under compulsion of risk or forfeiture, a waiver will not be implied. [Citations.]' [Citation.] For another, 'one may appeal from a portion of a severable and independent judgment while accepting the benefits of the unaffected remainder of the judgment. [Citations.]' [Citation.]" (*Satchmed Plaza Owners, supra,* 167 Cal.App.4th at p. 1042.) Wife maintains both that she acted under compulsion in an attempt to purchase the family home and that portions of the judgment were severable, such as the inclusion of terms unrelated to the home and terms not previously discussed.

We reject Husband's argument for a different reason. Wife did not need the judgment to investigate lenders or seek financing. Ultimately, she was unable to find enough money to take advantage of the benefit offered to her by the judgment. A clear acceptance would have taken place if Wife purchased the home and then sought to set aside other portions of the judgment, such as the spousal/child support or the *Gavron* warning. Accordingly, we conclude Wife did not waive her right to appeal. We deny the motion to dismiss.

36

82

DISPOSITION

We affirm the postjudgment order.  We deny the request for judicial notice
and the motion to dismiss.  In the interests of justice, each party shall bear their own costs
on appeal.


O'LEARY, P. J.

WE CONCUR:


THOMPSON, J.


GOETHALS, J.

37

# EXHIBIT B

84

Court of Appeal, Fourth Appellate District, Division Three
Kevin J. Lane, Clerk/Executive Officer
Electronically FILED on 2/6/2020 by Nettie De La Cruz, Deputy Clerk

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re Marriage of ALICIA MARIE and RYAL W. RICHARDS. | |
| ALICIA MARIE RICHARDS, | G055927 |
| Appellant, | (Super. Ct. No. 15D009634) |
| v. | O R D E R |
| RYAL W. RICHARDS, | |
| Respondent. | |

The petition for rehearing is DENIED.


O'LEARY, P. J.

WE CONCUR:


THOMPSON, J.


GOETHALS, J.

68

85

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF ORANGE

  I am over the age of 18 and not a party to the within action. My name and business address is Laura Archer, 2569 Orange Ave., CM, CA 92627

On February 14, 2020, I served the foregoing document described as **PETITION FOR REVIEW** on all interested parties in this action by placing true copies thereof in sealed envelopes addressed as follows:

| | | |
|---|---|---|
| Kevin E. Robinson<br>970 W. 17th Street<br>#D<br>Santa Ana, CA 92706<br>Tracking No. **940550369930025780783** | Orange County Superior Court<br>Judge Linda L. Miller, Dept. L74<br>341 The City Drive<br>Orange, California 92868<br>Tracking No. **940550369930025780784** | Court of Appeals<br>Fourth District, Div. 3<br>500 N. Ross Street<br>Santa Ana, CA 92701<br>Electronic Copy Only |

( x ) BY OVERNIGHT MAIL:  As follows:  I am "readily familiar" with this firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Orange, California, in the ordinary course of business.  I am aware that on motion of the parties served, service is presumed invalid if postal cancellation date is more than one day after date of deposit for mailing in declaration.

( ) BY FACSIMILE:  On  I served/transmitted the aforementioned document by facsimile machine, pursuant to Rule 2008.  The facsimile machine I used complied with Rule 2008(3), and no error was reported by the machine.  Pursuant to Rule 2008(3)(e), I caused the machine to print a confirmation record of each transmission, copies of which are attached.

( ) BY PERSONAL SERVICE:  I caused such envelopes to be delivered by hand to the offices of the addressees

  Executed on February 14, 2020, at Newport Beach, California.

(XX) (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

( ) (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

          Laura Archer

# EXHIBIT 2



# State of California
## Secretary of State

I, ALEX PADILLA, Secretary of State of the State of California, hereby certify: Selected pages. Ch. 352. 2010

That the attached transcript of _____ 11 _____ page(s) is a full, true and correct copy of the original record in the custody of this office.



IN WITNESS WHEREOF, I execute this certificate and affix the Great Seal of the State of California this day of

March 12, 2020

ALEX PADILLA
Secretary of State

Sec/State Form CE-109 (REV 01/2015)

88

Ch. 552

## Assembly Bill No. 939

———

Passed the Assembly  August 23, 2010

_Chief Clerk of the Assembly_

———

Passed the Senate  August 20, 2010

_Secretary of the Senate_

———

This bill was received by the Governor this _2nd_ day of _September_, 2010, at _3:45_ o'clock _p_.m.

_Private Secretary of the Governor_

89

**AB 939** — 8 —

on request, grant a brief continuance and may make appropriate temporary orders pending the continued hearing.

SEC. 4.  Section 2030 of the Family Code is amended to read:

2030.   (a) (1) In a proceeding for dissolution of marriage, nullity of marriage, or legal separation of the parties, and in any proceeding subsequent to entry of a related judgment, the court shall ensure that each party has access to legal representation, including access early in the proceedings, to preserve each party's rights by ordering, if necessary based on the income and needs assessments, one party, except a governmental entity, to pay to the other party, or to the other party's attorney, whatever amount is reasonably necessary for attorney's fees and for the cost of maintaining or defending the proceeding during the pendency of the proceeding.

(2)  When a request for attorney's fees and costs is made, the court shall make findings on whether an award of attorney's fees and costs under this section is appropriate, whether there is a disparity in access to funds to retain counsel, and whether one party is able to pay for legal representation of both parties. If the findings demonstrate disparity in access and ability to pay, the court shall make an order awarding attorney's fees and costs. A party who lacks the financial ability to hire an attorney may request, as an in pro per litigant, that the court order the other party, if that other party has the financial ability, to pay a reasonable amount to allow the unrepresented party to retain an attorney in a timely manner before proceedings in the matter go forward.

(b)  Attorney's fees and costs within this section may be awarded for legal services rendered or costs incurred before or after the commencement of the proceeding.

(c)  The court shall augment or modify the original award for attorney's fees and costs as may be reasonably necessary for the prosecution or defense of the proceeding, or any proceeding related thereto, including after any appeal has been concluded.

(d)  Any order requiring a party who is not the spouse of another party to the proceeding to pay attorney's fees or costs shall be limited to an amount reasonably necessary to maintain or defend the action on the issues relating to that party.

(e) The Judicial Council shall, by January 1, 2012, adopt a statewide rule of court to implement this section and develop a

90

— 9 —                                                    AB 939

form for the information that shall be submitted to the court to obtain an award of attorney's fees under this section.

SEC. 5.  Section 2032 of the Family Code is amended to read:

2032.  (a)  The court may make an award of attorney's fees and costs under Section 2030 or 2031 where the making of the award, and the amount of the award, are just and reasonable under the relative circumstances of the respective parties.

(b)  In determining what is just and reasonable under the relative circumstances, the court shall take into consideration the need for the award to enable each party, to the extent practical, to have sufficient financial resources to present the party's case adequately, taking into consideration, to the extent relevant, the circumstances of the respective parties described in Section 4320. The fact that the party requesting an award of attorney's fees and costs has resources from which the party could pay the party's own attorney's fees and costs is not itself a bar to an order that the other party pay part or all of the fees and costs requested. Financial resources are only one factor for the court to consider in determining how to apportion the overall cost of the litigation equitably between the parties under their relative circumstances.

(c)  The court may order payment of an award of attorney's fees and costs from any type of property, whether community or separate, principal or income.

(d)  Either party may, at any time before the hearing of the cause on the merits, on noticed motion, request the court to make a finding that the case involves complex or substantial issues of fact or law related to property rights, visitation, custody, or support. Upon that finding, the court may in its discretion determine the appropriate, equitable allocation of attorney's fees, court costs, expert fees, and consultant fees between the parties. The court order may provide for the allocation of separate or community assets, security against these assets, and for payments from income or anticipated income of either party for the purpose described in this subdivision and for the benefit of one or both parties. Payments shall be authorized only on agreement of the parties or, in the absence thereof, by court order. The court may order that a referee be appointed pursuant to Section 639 of the Code of Civil Procedure to oversee the allocation of fees and costs.

SEC. 6.  Section 2034 of the Family Code is amended to read:

91

**AB 939** — 10 —

2034. (a) On application of either party, the court may deny the family law attorney's real property lien described in Section 2033 based on a finding that the encumbrance would likely result in an unequal division of property because it would impair the encumbering party's ability to meet his or her fair share of the community obligations or would otherwise be unjust under the circumstances of the case. The court may also for good cause limit the amount of the family law attorney's real property lien. A limitation by the court is not to be construed as a determination of reasonable attorney's fees.

(b) On receiving an objection to the establishment of a family law attorney's real property lien, the court may on its own motion determine whether the case involves complex or substantial issues of fact or law related to property rights, visitation, custody, or support. If the court finds that the case involves one or more of these complex or substantial issues, the court may determine the appropriate, equitable allocation of fees and costs as provided in subdivision (d) of Section 2032.

(c) The court has jurisdiction to resolve any dispute arising from the existence of a family law attorney's real property lien.

SEC. 7. Section 2330.3 of the Family Code is amended to read:

2330.3. (a) All dissolution actions, to the greatest extent possible, shall be assigned to the same superior court department for all purposes, in order that all decisions in a case through final judgment shall be made by the same judicial officer. However, if the assignment will result in a significant delay of any family law matter, the dissolution action need not be assigned to the same superior court department for all purposes, unless the parties stipulate otherwise.

(b) The Judicial Council shall adopt a standard of judicial administration prescribing a minimum length of assignment of a judicial officer to a family law assignment.

(c) This section shall be operative on July 1, 1997.

SEC. 8. Section 2400 of the Family Code is amended to read:

2400. (a) A marriage may be dissolved by the summary dissolution procedure provided in this chapter if all of the following conditions exist at the time the proceeding is commenced:

(1) Either party has met the jurisdictional requirements of Chapter 3 (commencing with Section 2320) with regard to dissolution of marriage.

92

(2) Irreconcilable differences have caused the irremediable breakdown of the marriage and the marriage should be dissolved.

(3) There are no children of the relationship of the parties born before or during the marriage or adopted by the parties during the marriage, and the wife, to her knowledge, is not pregnant.

(4) The marriage is not more than five years in duration as of the date of separation of the parties.

(5) Neither party has any interest in real property wherever situated, with the exception of the lease of a residence occupied by either party which satisfies the following requirements:

(A) The lease does not include an option to purchase.

(B) The lease terminates within one year from the date of the filing of the petition.

(6) There are no unpaid obligations in excess of four thousand dollars ($4,000) incurred by either or both of the parties after the date of their marriage, excluding the amount of any unpaid obligation with respect to an automobile.

(7) The total fair market value of community property assets, excluding all encumbrances and automobiles, including any deferred compensation or retirement plan, is less than twenty-five thousand dollars ($25,000), and neither party has separate property assets, excluding all encumbrances and automobiles, in excess of twenty-five thousand dollars ($25,000).

(8) The parties have executed an agreement setting forth the division of assets and the assumption of liabilities of the community, and have executed any documents, title certificates, bills of sale, or other evidence of transfer necessary to effectuate the agreement.

(9) The parties waive any rights to spousal support.

(10) The parties, upon entry of the judgment of dissolution of marriage pursuant to Section 2403, irrevocably waive their respective rights to appeal and their rights to move for a new trial.

(11) The parties have read and understand the summary dissolution brochure provided for in Section 2406.

(12) The parties desire that the court dissolve the marriage.

(b) On January 1, 1985, and on January 1 of each odd-numbered year thereafter, the amounts in paragraph (6) of subdivision (a) shall be adjusted to reflect any change in the value of the dollar. On January 1, 1993, and on January 1 of each odd-numbered year thereafter, the amounts in paragraph (7) of subdivision (a) shall

93

**AB 939** — 12 —

be adjusted to reflect any change in the value of the dollar. The adjustments shall be made by multiplying the base amounts by the percentage change in the California Consumer Price Index as compiled by the Department of Industrial Relations, with the result rounded to the nearest thousand dollars. The Judicial Council shall compute and publish the amounts.

SEC. 9.   Section 2403 of the Family Code is amended to read:

2403.   When six months have expired from the date of the filing of the joint petition for summary dissolution, the court shall, unless a revocation has been filed pursuant to Section 2402, enter the judgment dissolving the marriage. The judgment restores to the parties the status of single persons, and either party may marry after the entry of the judgment. The clerk shall send a notice of entry of judgment to each of the parties at the party's last known address.

SEC. 10.   Section 2450 of the Family Code is amended to read:

2450.   (a)  The purpose of family centered case resolution is to benefit the parties by providing judicial assistance and management to the parties in actions for dissolution of marriage for the purpose of expediting the processing of the case, reducing the expense of litigation, and focusing on early resolution by settlement. Family centered case resolution is a tool to allow the courts to better assist families. It does not increase the authority of the court to appoint any third parties to the case.

(b)  The court may order a family centered case resolution plan as provided in Section 2451. If the court orders family centered case resolution, it shall state the family centered case resolution plan in writing or on the record.

SEC. 11.   Section 2451 of the Family Code is amended to read:

2451.   (a)  A court-ordered family centered case resolution plan must be in conformance with due process requirements and may include, but is not limited to, all of the following:

(1)  Early neutral case evaluation.

(2)  Alternative dispute resolution consistent with the requirements of subdivision (a) of Section 3181.

(3)  Limitations on discovery, including temporary suspension pending exploration of settlement. There is a rebuttable presumption that an attorney who carries out discovery as provided in a family centered case resolution plan has fulfilled his or her duty of care to the client as to the existence of community property.

94

— 13 —

**AB 939**

(4) Use of telephone conference calls to ascertain the status of the case, encourage cooperation, and assist counsel in reaching agreement. However, if the court is required to issue an order other than by stipulation, a hearing shall be held.

(5) If stipulated by the parties, modification or waiver of the requirements of procedural statutes.

(6) A requirement that any expert witness be selected by the parties jointly or be appointed by the court. However, if at any time the court determines that the issues for which experts are required cannot be settled under these conditions, the court shall permit each party to employ his or her own expert.

(7) Bifurcation of issues for trial.

(b) This section does not provide any additional authority to the court to appoint experts beyond that permitted under other provisions of law.

(c) The Judicial Council shall, by January 1, 2012, adopt a statewide rule of court to implement this section.

(d) The changes made to this section by the act adding this subdivision shall become operative on January 1, 2012.

SEC. 12. Section 3027 of the Family Code is amended to read:

3027. (a) If allegations of child abuse, including child sexual abuse, are made during a child custody proceeding and the court has concerns regarding the child's safety, the court may take any reasonable, temporary steps as the court, in its discretion, deems appropriate under the circumstances to protect the child's safety until an investigation can be completed. Nothing in this section shall affect the applicability of Section 16504 or 16506 of the Welfare and Institutions Code.

(b) If allegations of child abuse, including child sexual abuse, are made during a child custody proceeding, the court may request that the local child welfare services agency conduct an investigation of the allegations pursuant to Section 328 of the Welfare and Institutions Code. Upon completion of the investigation, the agency shall report its findings to the court.

SEC. 13. Section 3121 of the Family Code is amended to read:

3121. (a) In any proceeding pursuant to Section 3120, and in any proceeding subsequent to entry of a related judgment, the court shall ensure that each party has access to legal representation, including access early in the proceedings, to preserve each party's rights by ordering, if necessary based on the income and needs

95

**AB 939** — 14 —

assessments, one party, except a government entity, to pay to the other party, or to the other party's attorney, whatever amount is reasonably necessary for attorney's fees and for the cost of maintaining or defending the proceeding during the pendency of the proceeding.

(b) When a request for attorney's fees and costs is made, the court shall make findings on whether an award of attorney's fees and costs under this section is appropriate, whether there is a disparity in access to funds to retain counsel, and whether one party is able to pay for legal representation of both parties. If the findings demonstrate disparity in access and ability to pay, the court shall make an order awarding attorney's fees and costs. A party who lacks the financial ability to hire an attorney may request, as an in pro per litigant, that the court order the other party, if that other party has the financial ability, to pay a reasonable amount to allow the unrepresented party to retain an attorney in a timely manner before proceedings in the matter go forward.

(c) Attorney's fees and costs within this section may be awarded for legal services rendered or costs incurred before or after the commencement of the proceeding.

(d) The court shall augment or modify the original award for attorney's fees and costs as may be reasonably necessary for the prosecution or defense of a proceeding described in Section 3120, or any proceeding related thereto, including after any appeal has been concluded.

(e) Except as provided in subdivision (f), an application for a temporary order making, augmenting, or modifying an award of attorney's fees, including a reasonable retainer to hire an attorney, or costs, or both, shall be made by motion on notice or by an order to show cause during the pendency of any proceeding described in Section 3120.

(f) The court shall rule on an application for fees under this section within 15 days of the hearing on the motion or order to show cause. An order described in subdivision (a) may be made without notice by an oral motion in open court at either of the following times:

(1) At the time of the hearing of the cause on the merits.

(2) At any time before entry of judgment against a party whose default has been entered pursuant to Section 585 or 586 of the Code of Civil Procedure. The court shall rule on any motion made

96

— 15 —    **AB 939**

pursuant to this subdivision within 15 days and prior to the entry of any judgment.

(g) The Judicial Council shall, by January 1, 2012, adopt a statewide rule of court to implement this section and develop a form for the information that shall be submitted to the court to obtain an award of attorney's fees under this section.

SEC. 14.   Section 3150 of the Family Code is amended to read:

3150.   (a) If the court determines that it would be in the best interest of the minor child, the court may appoint private counsel to represent the interests of the child in a custody or visitation proceeding, provided that the court and counsel comply with the requirements set forth in Rules 5.240, 5.241, and 5.242 of the California Rules of Court.

(b) Upon entering an appearance on behalf of a child pursuant to this chapter, counsel shall continue to represent that child unless relieved by the court upon the substitution of other counsel by the court or for cause.

SEC. 15.   Section 3151 of the Family Code is amended to read:

3151.   (a) The child's counsel appointed under this chapter is charged with the representation of the child's best interests. The role of the child's counsel is to gather evidence that bears on the best interests of the child, and present that admissible evidence to the court in any manner appropriate for the counsel of a party. If the child so desires, the child's counsel shall present the child's wishes to the court. The counsel's duties, unless under the circumstances it is inappropriate to exercise the duty, include interviewing the child, reviewing the court files and all accessible relevant records available to both parties, and making any further investigations as the counsel considers necessary to ascertain evidence relevant to the custody or visitation hearings.

(b) Counsel shall serve notices and pleadings on all parties, consistent with requirements for parties. Counsel shall not be called as a witness in the proceeding. Counsel may introduce and examine counsel's own witnesses, present arguments to the court concerning the child's welfare, and participate further in the proceeding to the degree necessary to represent the child adequately.

(c) The child's counsel shall have the following rights:

(1) Reasonable access to the child.

(2) Standing to seek affirmative relief on behalf of the child.

97

counselor." Mediators who make those recommendations are considered mediators for purposes of Chapter 11 (commencing with Section 3160), and shall be subject to all requirements for mediators for all purposes under this code and the California Rules of Court. On and after January 1, 2012, all court communications and information regarding the child custody recommending counseling process shall reflect the change in the name of the process and the name of the providers.

(b)  If the parties have not reached agreement as a result of the mediation proceedings, the mediator may recommend to the court that an investigation be conducted pursuant to Chapter 6 (commencing with Section 3110) or that other services be offered to assist the parties to effect a resolution of the controversy before a hearing on the issues.

(c)  In appropriate cases, the mediator may recommend that restraining orders be issued, pending determination of the controversy, to protect the well-being of the child involved in the controversy.

SEC. 17.  Section 3557 of the Family Code is amended to read:

3557.  (a)  Notwithstanding any other provision of law, absent good cause to the contrary, the court, in order to ensure that each party has access to legal representation to preserve each party's rights, upon determining (1) an award of attorney's fees and cost under this section is appropriate, (2) there is a disparity in access to funds to retain counsel, and (3) one party is able to pay for legal representation for both parties, shall award reasonable attorney's fees to any of the following persons:

(1)  A custodial parent or other person to whom payments should be made in any action to enforce any of the following:

(A)  An existing order for child support.

(B)  A penalty incurred pursuant to Chapter 5 (commencing with Section 4720) of Part 5 of Division 9.

(2)  A supported spouse in an action to enforce an existing order for spousal support.

(b)  This section shall not be construed to allow an award of attorney's fees to or against a governmental entity.

SEC. 18.  Section 6323 of the Family Code is amended to read:

6323.  (a)  Subject to Section 3064:

(1)  The court may issue an ex parte order determining the temporary custody and visitation of a minor child on the conditions

# FILED

**In the office of the Secretary of State
of the State of California**

SEP **2 7** 2010

At _4:17_ O'Clock _P_ M.
DEBRA BOWEN, Secretary of State
By _Kathryn Crissy_
Deputy Secretary of State

Approved _____ SEP 2 5 _____, 2010

_Governor_

99

EXHIBIT 3

100



# State of California
## Secretary of State

I, ALEX PADILLA, Secretary of State of the State of California, hereby certify: Selected pages. Ch 703, 2001

That the attached transcript of _____ 3 _____ page(s) is a full, true and correct copy of the original record in the custody of this office.



IN WITNESS WHEREOF, I execute this certificate and affix the Great Seal of the State of California this day of

March 12, 2020

ALEX PADILLA
**Secretary of State**

Sec/State Form CE-109 (REV 01/2015)

101

OSP 09 113643

Ch 703

## Assembly Bill No. 583

———

Passed the Assembly        August 31, 2001

_Acting_   _Chief Clerk of the Assembly_

———

Passed the Senate        August 30, 2001

_Secretary of the Senate_

———

This bill was received by the Governor this ___12TH___ day of ___September___, 2001, at ___4___ o'clock P.M.

_Private Secretary of the Governor_

102

## AB 583

— 10 —

SEC. 7. Section 2122 of the Family Code is amended to read:

2122. The grounds and time limits for a motion to set aside a judgment, or any part or parts thereof, are governed by this section and shall be one of the following:

(a) Actual fraud where the defrauded party was kept in ignorance or in some other manner was fraudulently prevented from fully participating in the proceeding. An action or motion based on fraud shall be brought within one year after the date on which the complaining party either did discover, or should have discovered, the fraud.

(b) Perjury. An action or motion based on perjury in the preliminary or final declaration of disclosure, the waiver of the final declaration of disclosure, or in the current income and expense statement shall be brought within one year after the date on which the complaining party either did discover, or should have discovered, the perjury.

(c) Duress. An action or motion based upon duress shall be brought within two years after the date of entry of judgment.

(d) Mental incapacity. An action or motion based on mental incapacity shall be brought within two years after the date of entry of judgment.

(e) As to stipulated or uncontested judgments or that part of a judgment stipulated to by the parties, mistake, either mutual or unilateral, whether mistake of law or mistake of fact. An action or motion based on mistake shall be brought within one year after the date of entry of judgment.

(f) Failure to comply with the disclosure requirements of Chapter 9 (commencing with Section 2100). An action or motion based on failure to comply with the disclosure requirements shall be brought within one year after the date on which the complaining party either discovered, or should have discovered, the failure to comply.

SEC. 8. This act shall apply to any judgment that becomes final on or after January 1, 2002.

SEC. 9. No reimbursement is required by this act pursuant to Section 6 of Article XIII B of the California Constitution because the only costs that may be incurred by a local agency or school district will be incurred because this act creates a new crime or infraction, eliminates a crime or infraction, or changes the penalty for a crime or infraction, within the meaning of Section 17556 of

94

— 11 —

## AB 583

the Government Code, or changes the definition of a crime within the meaning of Section 6 of Article XIII B of the California Constitution.

94

103

# FILED

In the office of the Secretary of State
of the State of California

## OCT 1 1 2001

At ___10:10___ O'clock ___A___ .M.

BILL JONES, Secretary of State

By _____

Deputy Secretary of State

Approved _____ OCT 1 0 _____, 2001



Governor

# Cal. Fam. Code § 2120

### Section 2120 - Legislative findings and declaration

The Legislature finds and declares the following:

**(a)** The State of California has a strong policy of ensuring the division of community and quasi-community property in the dissolution of a marriage as set forth in Division 7 (commencing with Section 2500), and of providing for fair and sufficient child and spousal support awards. These policy goals can only be implemented with full disclosure of community, quasi-community, and separate assets, liabilities, income, and expenses, as provided in Chapter 9 (commencing with Section 2100), and decisions freely and knowingly made.

**(b)** It occasionally happens that the division of property or the award of support, whether made as a result of agreement or trial, is inequitable when made due to the nondisclosure or other misconduct of one of the parties.

**(c)** The public policy of assuring finality of judgments must be balanced against the public interest in ensuring proper division of marital property, in ensuring sufficient support awards, and in deterring misconduct.

**(d)** The law governing the circumstances under which a judgment can be set aside, after the time for relief under Section 473 of the Code of Civil Procedure has passed, has been the subject of considerable confusion which has led to increased litigation and unpredictable and inconsistent decisions at the trial and appellate levels.

*Ca. Fam. Code § 2120*

 casetext



# Cal. Fam. Code § 2121

### Section 2121 - Authority of court to relieve spouse from judgment

**(a)** In proceedings for dissolution of marriage, for nullity of marriage, or for legal separation of the parties, the court may, on any terms that may be just, relieve a spouse from a judgment, or any part or parts thereof, adjudicating support or division of property, after the six-month time limit of Section 473 of the Code of Civil Procedure has run, based on the grounds, and within the time limits, provided in this chapter.

**(b)** In all proceedings under this chapter, before granting relief, the court shall find that the facts alleged as the grounds for relief materially affected the original outcome and that the moving party would materially benefit from the granting of the relief.

*Ca. Fam. Code § 2121*

 casetext

# Cal. Fam. Code § 2122

Section 2122 - Grounds and time limits for motion to set aside judgment

The grounds and time limits for a motion to set aside a judgment, or any part or parts thereof, are governed by this section and shall be one of the following:

(a) Actual fraud where the defrauded party was kept in ignorance or in some other manner was fraudulently prevented from fully participating in the proceeding. An action or motion based on fraud shall be brought within one year after the date on which the complaining party either did discover, or should have discovered, the fraud.

(b) Perjury. An action or motion based on perjury in the preliminary or final declaration of disclosure, the waiver of the final declaration of disclosure, or in the current income and expense statement shall be brought within one year after the date on which the complaining party either did discover, or should have discovered, the perjury.

(c) Duress. An action or motion based upon duress shall be brought within two years after the date of entry of judgment.

(d) Mental incapacity. An action or motion based on mental incapacity shall be brought within two years after the date of entry of judgment.

(e) As to stipulated or uncontested judgments or that part of a judgment stipulated to by the parties, mistake, either mutual or unilateral, whether mistake of law or mistake of fact. An action or motion based on mistake shall be brought within one year after the date of entry of judgment.

(f) Failure to comply with the disclosure requirements of Chapter 9 (commencing with Section 2100). An action or motion based on failure to comply with the disclosure requirements shall be brought within one year after the date on which the complaining party either discovered, or should have discovered, the failure to comply.

*Ca. Fam. Code § 2122*

*Amended by Stats 2001 ch 703 (AB 583), s 7, eff. 1/1/2002.*

 casetext

107

1

# Cal. Fam. Code § 2123

Section 2123 - Judgment inadequate when made; division of assets and liabilities inequitable; support inadequate

Notwithstanding any other provision of this chapter, or any other law, a judgment may not be set aside simply because the court finds that it was inequitable when made, nor simply because subsequent circumstances caused the division of assets or liabilities to become inequitable, or the support to become inadequate.

*Ca. Fam. Code § 2123*

 casetext

# Cal. Fam. Code § 2124

### Section 2124 - Negligence of attorney imputed to client

The negligence of an attorney shall not be imputed to a client to bar an order setting aside a judgment, unless the court finds that the client knew, or should have known, of the attorney's negligence and unreasonably failed to self-protect.

*Ca. Fam. Code § 2124*

*Amended by Stats 2019 ch 115 (AB 1817),s 21, eff. 1/1/2020.*

 casetext

# Cal. Fam. Code § 2125

### Section 2125 - Discretion of court when ruling on action or motion

When ruling on an action or motion to set aside a judgment, the court shall set aside only those provisions materially affected by the circumstances leading to the court's decision to grant relief.

However, the court has discretion to set aside the entire judgment, if necessary, for equitable considerations.

*Ca. Fam. Code § 2125*

 casetext

110

1

# Cal. Fam. Code § 2126

Section 2126 - Date of valuation of assets and liabilities; equally divided, exception

As to assets or liabilities for which a judgment or part of a judgment is set aside, the date of valuation shall be subject to equitable considerations. The court shall equally divide the asset or liability, unless the court finds upon good cause shown that the interests of justice require an unequal division.

*Ca. Fam. Code § 2126*

 casetext



1

# Cal. Fam. Code § 2127

### Section 2127 - Statement of decision rendered upon request

As to actions or motions filed under this chapter, if a timely request is made, the court shall render a statement of decision where the court has resolved controverted factual evidence.

*Ca. Fam. Code § 2127*

 casetext

112

1

# Cal. Fam. Code § 2128

### Section 2128 - Construction of chapter

**(a)** Nothing in this chapter prohibits a party from seeking relief under Section 2556.

**(b)** Nothing in this chapter changes existing law with respect to contract remedies where the contract has not been merged or incorporated into a judgment.

**(c)** Nothing in this chapter is intended to restrict a family law court from acting as a court of equity.

**(d)** Nothing in this chapter is intended to limit existing law with respect to the modification or enforcement of support orders.

**(e)** Nothing in this chapter affects the rights of a bona fide lessee, purchaser, or encumbrancer for value of real property.

*Ca. Fam. Code § 2128*

 casetext



1

# Cal. Fam. Code § 2129

### Section 2129 - Effective date of chapter

This chapter applies to judgments entered on or after January 1, 1993.

*Ca. Fam. Code § 2129*

casetext

114                                                                                        1

# EXHIBIT 4

# Cal. Fam. Code § 1000

Section 1000 - Generally

**(a)** A married person is not liable for any injury or damage caused by the other spouse except in cases where the married person would be liable therefor if the marriage did not exist.

**(b)** The liability of a married person for death or injury to person or property shall be satisfied as follows:

**(1)** If the liability of the married person is based upon an act or omission which occurred while the married person was performing an activity for the benefit of the community, the liability shall first be satisfied from the community estate and second from the separate property of the married person.

**(2)** If the liability of the married person is not based upon an act or omission which occurred while the married person was performing an activity for the benefit of the community, the liability shall first be satisfied from the separate property of the married person and second from the community estate.

**(c)** This section does not apply to the extent the liability is satisfied out of proceeds of insurance for the liability, whether the proceeds are from property in the community estate or from separate property. Notwithstanding Section 920, no right of reimbursement under this section shall be exercised more than seven years after the spouse in whose favor the right arises has actual knowledge of the application of the property to the satisfaction of the debt.

*Ca. Fam. Code § 1000*

 casetext

1

116

# EXHIBIT 5

02/14/2017

RYAL WILLIAM RICHARDS- VOL. I

1           SUPERIOR COURT OF THE STATE OF CALIFORNIA

2           COUNTY OF ORANGE, LAMOREAUX JUSTICE CENTER

3

4

    IN RE THE MARRIAGE OF:              )
5                                       )
    PETITIONER:  RYAL W. RICHARDS       )
6                                       )
                    AND                 ) Case No. 15D009634
7                                       )
    RESPONDENT:  ALICIA M. RICHARDS     )    Pages 1 - 196
8                                       )

9

10

11

12    Deposition of:    RYAL WILLIAM RICHARDS
                        Volume I
13

14    Date and Time:    Tuesday, February 14, 2017
                        10:13 a.m.
15

16    Place:            1301 Dove Street
                        Suite 1050
17                      Newport Beach, California

18

      Reporter:         Linda A. Simpson, CSR
19                      CRR, RMR, CCRR
                        Certificate No. 2266
20

21

22

23

24

25

SIMPSON DEPOSITION SERVICES (800) 505-9994

02/14/2017

RYAL WILLIAM RICHARDS- VOL. I

```
1        MR. ZECH:  Counsel, I hope you act that way in front
2    of the judge.
3        MR. ROBINSON:  I hope you act the way you do.  I've
4    handled many cases with Linda Miller.  I get along with
5    her.
6        MR. ZECH:  And so do I.
7        MR. ROBINSON:  Yeah I doubt it.  So --
8        MR. ZECH:  Enough of the grandstanding, counsel.  We
9    don't need it.
10       MR. ROBINSON:  Stop.
11       MR. ZECH:  It really doesn't -- it doesn't make for   10:31
12   a good record, and it certainly is not professional.
13       MR. ROBINSON:  Are you done?
14       MR. ZECH:  I'm done.  Can we go on with the
15   deposition?
16       MR. ROBINSON:  You can't just make statements like
17   that on the record.  It doesn't really help you.  Just
18   try to answer the questions and we'll try to march
19   through this as well as we can.
20       THE WITNESS:  I don't remember is the answer.  It
21   was all a long time ago.
22       Q.    BY MR. ZECH:  Okay.  So you don't recall
23   participating in any program that you were sentenced to   10:31
24   as a result of the entry of any kind of plea bargain; is
25   that your testimony too?
```

119

02/14/2017

RYAL WILLIAM RICHARDS- VOL. I

```
1                    REPORTER'S CERTIFICATE

2

3

4

5           The undersigned Certified Shorthand Reporter

6    licensed in the State of California does hereby certify:

7           That the foregoing deposition was taken before

8    me at the time and place therein set forth, at which time

9    the witness was duly sworn by me;

10          That the testimony of the witness and all

11   objections made at the time of the examination were

12   recorded stenographically by me and were thereafter

13   transcribed, said transcript being a true copy of my

14   shorthand notes thereof.

15          In witness whereof, I have subscribed my name

16   this date:  2/20/2017.

17

18

19   _____

20           Linda A. Simpson, CSR, RMR, CRR, CCRR

21              Certificate Number 2266

22

23

24

25
```

120

# EXHIBIT 6

121

Alicia Remsen Richards
351 Catalina Drive
Newport Beach, CA 92663
(949_813-6138

Plaintiff in Pro Se

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**04/17/2018** at 01:33:36 PM

Clerk of the Superior Court
By Isia Vazquez,Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF ORANGE

ALICIA MARIE RICHARDS,

     Plaintiff,

vs

RYAL W. RICHARDS and DOES 1 through 100, Inclusive,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 30-2018-00986705-CU-FR-CJC

Judge Glenn Salter

<u>VERIFIED COMPLAINT FOR:</u>

1. Fraud in Fact
2. Sexual Conduct
3. Right of Privacy
4. Intentional Infliction of Emotional Distress
5. Defamation of Character
6. Threats and Spousal Abuse
7. Breach of Contract and Covenants
8. Detriment
9. Breach of Fiduciary Duty

**DEMAND FOR JURY TRIAL**

PLEASE TAKE NOTICE that ALICIA REMSEN RICHARDS ("Plaintiff), alleges against Defendant RYAL W. RICHARDS ("Defendant"), and DOES 1 through 100,and each of them as follows:

## **GENERAL ALLEGATIONS**

1.    At all relevant times, Plaintiff has been and is an individual residing in Newport Beach, California.

1

122

EXHIBIT 7

123

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ORANGE, LAMOREAUX JUSTICE CENTER

DEPARTMENT L-74 - HON LINDA MILLER, JUDGE


IN RE THE MARRIAGE OF )

RYAL RICHARDS            )

PETITIONER              )

VS.                      )  CASE NO:  15D009634

ALICIA RICHARDS          )

RESPONDENT              )

_____)


REPORTER'S TRANSCRIPT

JANUARY 26, 2018


A P P E A R A N C E S


FOR PETITIONER:            KEVIN ROBINSON
                           ATTORNEY AT LAW

FOR RESPONDENT:            ALICIA RICHARDS
                           PRO PER


KATHRYN CHRISTOPHER, CSR 11188
OFFICIAL COURT REPORTER

124

1  FAMILY LAW PROCEEDING.  THE OTHER PARTY IS ENTITLED TO

2  THEIR SHARE OF THE COMMUNITY.  THIS IS NOT A DEFERRED

3  HOME SALE CASE, AS YOU WOULD ARGUE, IN YOUR PLEADINGS.

4  IT IS NOT.  A DEFERRED HOME SALE CASE IS USUALLY WHEN

5  YOU HAVE A SEVERELY DISABLED CHILD, FOR EXAMPLE, THAT

6  REQUIRES TO STAY IN THE HOUSE OR SOME OTHER REASON FOR

7  A SHORT PERIOD OF TIME COUPLED WITH LOOKING AT THE

8  OTHER PARTIES PREJUDICE TO THEM FOR NOT BEING ABLE TO

9  GET THEIR MONEY SOONER.  IT IS SOMETHING THAT IS DONE

10  VERY RARELY AND IN EXTREME CIRCUMSTANCES.

11          MS. RICHARDS:  I DISAGREE.  I HAVE A CASE.  I

12  HAVE THE CASE OF MARRIAGE OF BRAUD.

13          THE COURT:  I READ YOUR CASE, MA'AM.

14          MS. RICHARDS:  THAT CASE TALKS ABOUT A FAMILY

15  THAT THEY USED THE -- THE SUPPORT AGAINST THE EQUITY

16  IN THE HOME AND THE HOUSE WAS DEFERRED FOR SEVEN

17  YEARS.

18          THE COURT:  OKAY.

19          MS. RICHARDS:  I'M ONLY ASKING FOR THE HOUSE

20  TO BE DEFERRED UNTIL I LITIGATE MY CIVIL LITIGATION

21  AGAINST HIM.

22          THE COURT:  AND THAT'S NOT GOOD CAUSE, AND

23  IT'S NOT GOING TO HAPPEN, AND YOU DIDN'T FILE YOUR --

24  I DON'T THINK YOUR CIVIL LAW SUIT IS EVEN FILED YET.

25          MS. RICHARDS:  I WAS WAITING FOR THIS TO

26  HAPPEN.  I MEAN I -- I WILL -- I WILL PROBABLY -- I

1    REPORTER'S CERTIFICATE

2

3    STATE OF CALIFORNIA   )

4    COUNTY OF ORANGE      )

5

6

7

8         I, KATHRYN CHRISTOPHER, CSR #11188, DO HEREBY

9    CERTIFY THAT THE WITHIN AND FOREGOING TRANSCRIPT IS A

10   FULL, TRUE, AND CORRECT TRANSCRIPT OF MY SHORTHAND

11   NOTES THEREOF, AND IS A FULL, TRUE, AND CORRECT

12   STATEMENT OF THE PROCEEDINGS HAD IN SAID CAUSE.

13

14

15

16

17   _____

18   KATHRYN CHRISTOPHER CSR #11188

19   OFFICIAL COURT REPORTER

20

21

22   DATED____4|5|18_____

23

24

25

26